JOANNE S. et al., on Behalf of Themselves and All Others Similarly Situated, Plaintiffs, v HUGH L. CAREY, as Governor of the State of New York, et al., Respondents, and JAMES A. KRAUSKOPF, as Commissioner of the New York City Human Resources Administration, et al., Appellants.

First Department, February 25, 1986

APPEARANCES OF COUNSEL

*Pamela Seider Dolgow* of counsel *(Fay Leoussis* with her on the brief; *Frederick A. O. Schwarz, Jr., Corporation Counsel,* attorney), for appellants.

*Arnold D. Fleischer* of counsel *(O. Peter Sherwood* with him on the brief; *Robert Abrams, Attorney-General,* attorney), for respondents.

### OPINION OF THE COURT

Asch, J.

There has been a bitter battle, not only in New York, but throughout America as to whether State or local governments, or private resources, alone, should bear the responsibility for sheltering the homeless. *(See, e.g.,* Note, *Building a House of Legal Rights: A Plea for the Homeless,* 59 St. John's L Rev 530 [spring 1985]; *New Plan to Aid Homeless, New York Times,* Dec. 20, 1985, p B1.) The matter before us is a skirmish in that battle.

The instant action was commenced by 11 State psychiatric hospital patients at Manhattan Psychiatric Center (MPC) who have been found ready for discharge but have not been released to the community because of a lack of adequate residential placements. Plaintiffs, representing 140 similarly situated persons, claim that State officials have failed to provide them with appropriate residential placement, supervision and aftercare and that, as a result thereof, they have been and continue to be unlawfully confined at MPC. Plaintiffs seek a declaration of their right to receive residential placement, supervision and care upon their release from MPC. They also seek orders directing the State defendants to release them into community treatment settings and, generally, to "develop and provide sufficient community treatment settings

to provide needed shelter and aftercare to the remainder of the plaintiff class".

Initially, the State defendants moved to dismiss the complaint, *inter alia,* on the ground that it presented a nonjusticiable controversy. That motion was granted and the complaint dismissed. Ultimately, the Court of Appeals held that the issues raised in the complaint were justiciable. *(See, Joanne S. v Carey,* decided together with *Klostermann v Cuomo,* 61 NY2d 525.)

On remand from the Court of Appeals, the State defendants moved to dismiss the complaint for failure to state a cause of action. Prior to the return date of that motion, the State defendants also moved, pursuant to CPLR 1001, to join appellants, two New York City Commissioners and their agencies, the New York City Human Resources Administration (HRA) and the New York City Department of Health, Mental Retardation and Alcoholism Services (MHMRAS). The motion to dismiss was stayed pending determination of the joinder motion.

Special Term granted the State defendants' motion to join HRA and MHMRAS as party defendants in this action. The court stated that the proposed municipal defendants "have a substantial interest in the subject matter before the court and are persons who ought [to] be parties 'if complete relief is to be accorded between the persons who are parties to the action' (CPLR 1001 [a])". Special Term apparently misconstrued appellants' argument when it stated that "the City officials concede that their joinder may be required at some stage in this litigation". In fact, the city opposed the joinder motion on the basis that the proposed city agencies were not necessary parties pursuant to CPLR 1001 (a) and the governing case law. In the alternative, the city argued that the joinder motion was premature since the State had moved to dismiss the complaint and that such motion was *sub judice,* and that the State's joinder theory was based on speculation as to hypothetical court orders and not on any claim that city agencies are not presently performing any required acts. Thus, the city contended that, at most, joinder of the city agencies might be warranted at such time as the State was found to be required to provide additional services, and then only if the court were to entertain consideration of a remedy involving city participation. *(See,* CPLR 1003.)

Appellants maintain that "where the State defendants have

the primary obligation under section 29.15 of the Mental Hygiene Law to prepare and implement written service plans governing the discharge and conditional release of plaintiffs from a State psychiatric facility to the community, and where local social service officials and directors of local governmental units are only required under the statute to cooperate, where appropriate, with the State's discharge efforts, the court below erred in ordering municipal defendants joined as necessary parties in this action".

A party who ought to be joined is a party whose presence is necessary if complete relief is to be accorded to the persons who have already been joined or who might be inequitably affected by a judgment in the action (CPLR 1001 [a]). The primary reason for compulsory joinder of parties is to avoid multiplicity of actions and to protect nonparties whose rights should not be jeopardized if they have a material interest in the subject matter. *(Steinbach v Prudential Ins. Co.*, 172 NY 471; *Matter of Figari v New York Tel. Co.*, 32 AD2d 434.)

In making the determination whether an absentee need be joined as an indispensable party, it must be decided if the proposed party has such an interest in the litigation that the court cannot settle the controversy without necessarily considering the interests of the proposed party. It also must be determined if the court's decision in the case, in the absence of the proposed parties, will have the element of finality for the protection of those before the court. *(Henshel v Held,* 13 AD2d 771; *China Sugar Refining Co. v Anderson, Meyer & Co.,* 6 Misc 2d 184, 185.)

The State defendants founded their joinder motion solely on the obligation of officials of HRA and MHMRAS, under Mental Hygiene Law § 29.15 (f), (h) and (n), to cooperate with the director of a psychiatric facility such as MPC in the State's discharge efforts on behalf of a patient to be discharged or conditionally released to the community.

Essentially, the State defendants urged that since each plaintiff in this action asserts rights to housing and aftercare services under these statutory provisions, HRA and MHMRAS have the same responsibilities, if any, that the court may later find apply to the State defendants under the statute.

However, under Mental Hygiene Law § 29.15, the primary responsibility for assuring that discharged State mental patients are placed in appropriate aftercare programs upon discharge rests with the State. According to the statute,

certain local governmental units are merely to cooperate with the State's efforts to plan for living arrangements and after-care for patients who are being discharged from State mental hospitals. The State has the chief responsibility for such planning process, whereas the city agencies are required "to cooperate with" the State when requested. Consequently, a reading of the statute evidences that the State is the principal executor of the program. The statute contemplates that the State hospital staff will consult with city agencies in fulfilling its duty. Hence, assuming, arguendo, that the State is legally obligated to perform under the statute and to create housing in order to implement its plans, the city is merely directed to cooperate with the State in fulfilling the State's responsibility. Thus, the city agencies are neither necessary nor indispensable parties in this action. *(See, Matter of Fuller,* 86 Misc 2d 672.)* To remain a proper party, one must be a party against whom there exists a right to relief on behalf of petitioners.

A virtually identical joinder issue was decided against the State in *Klostermann v Cuomo* (126 Misc 2d 247, on remand from Ct App). The plaintiffs in *Klostermann* were persons suing individually and on behalf of all others similarly situated. Each was treated in a State psychiatric hospital and discharged as part of the State's policy of releasing patients to less restrictive community-based residences. Each plaintiff became one of the homeless wandering the streets of New York City. The crux of the plaintiffs' complaint was an asserted right under State law to receive residential placement pursuant to Mental Hygiene Law § 29.15 (f) through (h). As in the instant case, the State, in *Klostermann,* moved to join HRA and MHMRAS as necessary parties on almost identical grounds to those asserted here.

Special Term denied the State's joinder motion in *Klostermann (supra)* and determined that the city agencies were not necessary parties since the plaintiffs could obtain full relief without such joinder and since the proposed defendants would suffer no prejudice.

Justice Wallach concluded (126 Misc 2d, at pp 249-250): "[T]he City agencies (who have appeared and been fully heard on this motion) are in a far better position to assess whether they will suffer any prejudice or be inequitably affected by any ultimate judgment in this action than the present defendants, and these proposed additional defendants discern none. To the extent that a judgment adverse to the present defendants may require some cooperative action by * * * the City agencies,

they stand ready to perform their duty without demur. Joinder of these acquiescent and nonadversarial parties would only serve to impede and delay disposition of plaintiffs' claims without any visible benefit."

In the instant case, the State defendants fail to articulate any specific legal duties they would assign to HRA or MHMRAS under section 29.15. Furthermore, the State has come forward with no evidence that the city agencies sought to be joined do not in fact "cooperate" to the extent required by statute. The State does not even allege that the city does not fulfill this statutory duty. Hence, since neither the State nor the plaintiffs have alleged that the city does not fulfill its statutory duty to cooperate, the State's contention that joinder is necessary to ensure the city's compliance with a conjectural court order is entirely speculative. In such circumstances, the nonparty's voluntary compliance with the law will be presumed, and the nonparty is therefore unnecessary in the action. *(Durant v Whedon,* 201 App Div 196, 202.) This is so, especially when the nonparty is a governmental entity *(supra).* It seems noteworthy that in *Klostermann v Cuomo* (61 NY2d 525, 539, *supra),* the Court of Appeals described as "offensive" the State defendants' implication that local governmental agencies would not honor their obligation to obey a noncoercive declaratory judgment of the courts.

It should also be noted that the plaintiffs and the city, as to whom potential prejudice would be relevant under CPLR 1001 (a), will not be prejudiced by nonjoinder. Plaintiffs have made no legal claims or asserted any factual allegations against the city. Nonjoinder will not prevent plaintiffs from obtaining full relief. The city will not be prejudiced since, under the statute (Mental Hygiene Law § 29.15), the State alone bears the primary responsibility under the statute.

It is also clear that, in the context of governmental policies and programs which inevitably entail the involvement of numerous agencies, departments and officials, only those governmental entities that are primarily responsible for the challenged policy are necessary parties. *(See, Matter of Szanto v Dumpson,* 77 Misc 2d 392; *Matter of Fletcher v Lavine,* 75 Misc 2d 808; *Matter of Weinhandler v Blum,* 84 AD2d 716, 717; *Filler v Port Wash. Union Free School Dist.,* 436 F Supp 1231, 1234.) These cases essentially hold that in suits involving jointly administered public assistance programs, only the governmental entity whose policies are the subject of the plaintiffs' challenge is a necessary party.

Consequently, as the statute imposes the primary responsibility for discharge planning on the State, the municipal defendants are neither necessary nor indispensable parties in this action.

Accordingly, the order of the Supreme Court, New York County (Orest V. Maresca, J.), entered December 3, 1984, which granted the motion of defendants-respondents to join appellants as defendants, should be reversed, on the law and facts, to the extent appealed from, and the motion by defendants-respondents denied, without costs.

MURPHY, P. J., SANDLER and FEIN, JJ., concur.

Order, Supreme Court, New York County, entered on December 3, 1984, unanimously reversed, on the law and facts, to the extent appealed from and the motion by defendants-respondents denied, without costs and without disbursements.