Barbara Jiggetts et al., on Behalf of Themselves, Their Children, and All Others Similarly Situated, Respondents-Appellants, v William J. Grinker, as Commissioner of the New York City Department of Social Services, et al., Appellants-Respondents, et al., Defendants.

First Department, June 15, 1989

2

### APPEARANCES OF COUNSEL

*Matthew Diller* of counsel *(Morton B. Dicker, Ann Moynihan, Helaine Barnett, Arthur Fried* and *Maxwell Gould* with him on the brief; *John E. Kirklin,* attorney), for Barbara Jiggetts and others, respondents-appellants.

*Andrew Goldberg* for Dorothy Hughes, respondent-appellant.

*Alan G. Krams* of counsel *(Fay Leoussis* with him on the brief; *Peter L. Zimroth, Corporation Counsel,* attorney), for William J. Grinker, appellant-respondent.

*Robert J. Schack* of counsel *(Robert Abrams, Attorney-General,* attorney), for Cesar Perales, appellant-respondent.

*Thomas H. Moreland* of counsel *(Jeffrey S. Trachtman, Shirley Traylor* and *Juan Cartagena* with him on the brief; *(Kramer, Levin, Nessen, Kamin & Frankel,* and *Community Service Society of New York,* attorneys), for Black Child Development Institute-New York Affiliate, Inc. and others, *amici curiae.*

### OPINION OF THE COURT

SMITH, J.

Defendant-appellant, William J. Grinker, Commissioner of

the New York City Department of Social Services (the City Commissioner) and defendant Cesar Perales, Commissioner of the New York State Department of Social Services (the State Commissioner) appeal from the order, dated March 15, 1988, and amended order dated June 15, 1988 and entered June 16, 1988, of the Supreme Court, New York County (Karla Moskowitz, J.), which *inter alia,* (1) denied the City and the State Commissioners' motions to dismiss the complaint for failure to state a cause of action, (2) directed the City Commissioner to pay shelter allowances to six plaintiffs in amounts equal to their actual rents, (3) directed the City Commissioner to pay all rent arrears for six plaintiff households, although those arrears were for rents in excess of their shelter allowances, (4) ordered the State Commissioner to reimburse the City Commissioner proportionally for payments made pursuant to its order, and (5) granted certification of a plaintiff class, directing the defendants to provide notice to such class *(see,* 139 Misc 2d 476).

Plaintiffs cross-appeal from such orders insofar as they failed to deny in their entirety defendants' motions to dismiss, dismissed certain of their statutory and regulatory claims, and determined that plaintiffs' constitutional claims had been withdrawn.

This is a class action for a declaratory judgment and injunctive relief brought on behalf of families residing in New York City who have children, who receive public assistance in the form of Aid to Families with Dependent Children (ADC) and whose shelter costs exceed the maximum shelter allowance payable to them under the State Commissioner's shelter allowance schedules. Plaintiffs contend that because the State defendant's schedule for rent allowances has not kept pace with increased shelter costs, thousands of families receiving public assistance are forced to rent apartments with rents above their shelter grants. As a result, claim plaintiffs, many families like themselves fall behind in rent payments, are evicted and become homeless. Plaintiffs seek a declaration that Social Services Law § 350 (1) (a), *inter alia,* prohibits defendant from maintaining such low shelter allowance maxima levels.

## FACTS

Barbara Jiggetts commenced this action on February 26, 1987 naming as defendants the City and State Commissioners

and her landlord, Ocean Park Company. She later withdrew as a party to the proceedings. When the action was commenced, Ms. Jiggetts resided with her three minor children at 120 Beach 19th Street, Far Rockaway, an apartment building subsidized by the United States Department of Housing and Urban Development (H.U.D.). When Ms. Jiggetts and her husband moved into their apartment in October of 1980, their monthly rent was $264.85. In 1982, when her third child was two months old, Mr. Jiggetts deserted the family and in 1983, Barbara Jiggetts turned to public assistance.

At the time she commenced this action, the family received a monthly ADC grant consisting of a shelter allowance of $270,[1] received as a two-party check, a nonshelter allowance of $266 and $50 in child support payments. Ms. Jiggetts also received $172 in food stamps each month. This constituted the family's sole income. Ms. Jiggetts had not been employed since February 1986. Her rent was $381.15, which was $111.15 more than the $270 she received in shelter allowance. She alleged that due to the difficulty in providng for food, clothing, utilities and other necessities on the nonshelter allowance and hospitalization for surgery, she was unable to pay the extra $111.15 from the nonshelter portions of her grant in order to meet her full monthly rent. Moreover, prior to June 1986, when the New York City Department of Social Services (NYCDSS) began to issue a check for shelter allowance in both her name and that of the landlord, Ms. Jiggetts had made only a partial payment of $155 towards her rent for one month.

In October of 1986 Ms. Jiggetts was served by her landlord, defendant Ocean Park Company, with a notice of dispossess demanding $1,055.55 which apparently included $666 in excess rent for six months, $235 in legal and late fees and approximately $115 in additional rent arrears for June 1986. She appeared *pro se* in Housing Court, Queens County, and entered into a stipulation with the landlord to pay $1,401.70 which included rent for October 1986. By notice dated January 25, 1987, the NYCDSS agreed to pay the arrears pursuant to 18 NYCRR 352.7 except for $666, constituting the amount of rent above her shelter allowance for six months. In February 1987, Ms. Jiggetts was served with a 72-hour notice of eviction.

---

1. Ms. Jiggetts' shelter allowance was increased as of January 1, 1988 to $312.

She alleged that her search for alternate permanent housing in New York City, at or below the amount of her shelter allowance, had been fruitless. She applied for Federally subsidized housing assistance through the New York City Housing Authority but was advised that the Authority was not yet considering applications made after 1982.

On March 8, 1987, Jiggetts amended her complaint to include a request for certification as a class. By order dated March 10, 1987 (entered September 9, 1987) the Supreme Court, New York County (per K. Moskowitz, J.), directed that the NYCDSS pay the $1,552.45 in then accumulated arrears and other rent due and that upon such payment the judgment and warrant in the Housing Court be vacated.

In addition to Ms. Jiggetts, there are six intervening plaintiffs whose circumstances are similar to those of Ms. Jiggetts. Each intervenor has one or more children. Each originally rented an apartment which was within the level of the shelter allowance. Each received rent increases and, now, has rent payments in excess of the shelter allowance.

DECISION OF THE MOTION COURT

While recognizing that prior decisions by the Court of Appeals and by this court have denied challenges to the statutory and regulatory scheme of shelter allowances at issue herein, the motion court distinguished those prior cases on the grounds that in them the court had not been required to address Social Services Law § 350. The motion court interpreted the language of section 350 and of section 344 as providing a legislative mandate that defendants provide levels of assistance which are "adequate" to meet the needs of indigent children.

The court reviewed several decisions from other jurisdictions (*Massachusetts Coalition for Homeless v Secretary of Human Servs.,* 400 Mass 806, 511 NE2d 603 [1987]; *State ex rel. Ventrone v Birkel,* 54 Ohio St 2d 461, 377 NE2d 780 [1978], *later appeal* 65 Ohio St 2d 10, 417 NE2d 1249 [1981]; *City & County of San Francisco v Superior Ct.,* 57 Cal App 3d 44, 128 Cal Rptr 712 [Ct App, 1st Dist 1976]; *Keller v Thompson,* 56 Haw 183, 532 P2d 664 [1975]) wherein courts have directed that public assistance allowances conform to the needs of the poor based upon broad language of enabling statutes in those States. Similarly, the court interpreted the use of the word "shall" in sections 350 and 344 as providing a legislative

mandate to provide adequate shelter allowances for children, which mandate the court could enforce.

As to the application for class certification, the IAS court again recognized that this court has denied such motions in similar situations, but found that certification was appropriate since, *inter alia,* (1) there are at least 100,000 public assistance households with children in New York City whose rents exceed the shelter maxima; (2) there are questions of law and fact common to the class (whether the law mandates allowances which meet their full shelter needs); (3) the representative parties would fairly protect the class interests; and (4) the proposed class consists of poor, single mothers, likely to be uneducated and unaware that legal recourse against defendants may exist.

Finding that "§ 350 may well set forth a legislative mandate regarding the care of children" *(supra,* 139 Misc 2d, at 486) and that "the current regulation is totally inadequate to provide adequate housing to plaintiffs and their children," the court directed defendants to promulgate regulations which satisfy current housing costs. Concluding that the equities clearly tip in plaintiffs' favor and that they face eviction and the dismal prospect of emergency shelters, an irreparable harm, the court granted a preliminary injunction to six of the named plaintiffs and intervenors, allowing them to stay in their homes, and required the defendants to pay their rent arrears and shelter allowances equal to their current rents.

CONTENTIONS OF THE PARTIES

Plaintiffs urge that article XVII, § 1 of the NY Constitution and section 350 (1) (a) and section 344 (2) of the Social Services Law mandate that the State and city defendants provide shelter allowances which bear a reasonable relationship to the cost of housing in New York City so that families receiving Aid to Dependent Children may raise those children in a permanent home. Plaintiffs do not challenge the State and city defendants' flat-grant system of setting ceilings on the level of shelter grants.

Specifically, plaintiffs contend first that Social Services Law § 350 (1) (a), along with section 131-a (1), both promulgated pursuant to article XVII, § 1 of the NY Constitution, provide an absolute mandate that grants be sufficient to enable families with children receiving ADC to remain in permanent homes.

Section 350 (1) (a), which is the statutory standard for shelter allowances for ADC families, states that "[a]llowances shall be adequate to enable the father, mother or other relative to bring up the child properly, having regard for the physical, mental and moral well-being of such child". Plaintiffs contend that this mandatory provision reflects the Legislature's special concern for the needs of children, which special concern is reflected in related provisions of the statutory scheme (i.e., § 344 [2] [authorizing aid in the form of services to children in need]; § 350-j [3] [providing emergency assistance to families with children]; § 371 [3] [defining a destitute child]); and also in the legislative history of section 350 (1) (a) and of child welfare legislation in this State.

Second, plaintiffs contend that the schedule of shelter allowances set forth in State defendant's regulation 18 NYCRR 352.3 violates the statutory mandate of section 350 (1) (a) because its prescribed maximum allowances are inadequate to house ADC families in apartments in New York City. In support of this contention plaintiffs note that when the State defendant promulgated its schedule in 1975, it was based upon detailed studies of the cost of housing for each social services' district in the State and the set maximum allowances were sufficient to cover the actual rents of 95% of all public assistance families. (*Matter of Bernstein v Toia*, 43 NY2d 437, 447 [1977].) Moreover, in *Bernstein* the State relied on evidence that the 5% of recipients whose full rent would not be met could relocate to available apartments priced within the shelter allowance. Plaintiffs presented statistical and other evidence to the motion court in support of their contention that over the past 13 years rental cost in New York City has been 4 to 5 times greater than defendant's increase in shelter allowances. Between 1975 and 1984 the contract rent in New York City rose 90%, while between 1975 and December 1987 the shelter schedule was increased only once by approximately 26%. Plaintiffs contend that in February 1987, when this action was commenced, over 60% of New York City public assistance families living in private housing were forced to pay rents in excess of the shelter maximum and that both the Governor and defendant Perales had acknowledged that by the end of 1987 the number would be even higher.

Moreover, plaintiffs maintain that the State defendant's increase in the maximum shelter grant by 13%, effective January 1, 1988, was arbitrarily set, and does not close the gap between any of the named plaintiffs' rents at the time

they joined the action, and that the City Commissioner himself estimates that even after the increase, 45% of public assistance households in private housing in New York have rents exceeding the shelter maximum.

Third, plaintiffs argue that previous judicial challenges to defendants' shelter assistance levels did not allege that plaintiffs were threatened with eviction, were unable to locate alternative housing and that grant levels were inadequate to prevent them and their children from being raised in their own homes.

Plaintiffs distinguish *Matter of Bernstein v Toia* (43 NY2d 437 [1977], *supra)* on the grounds that the *Bernstein* plaintiffs challenged the authority of the State Commissioner to adopt a flat-grant methodology for shelter allowances rather than, as here, the over-all adequacy of the schedule; that none of the recipient plaintiffs in *Bernstein* received ADC and thus the Court of Appeals had no occasion to consider the statutory mandate of section 350 (1) (a); and that the *Bernstein* court specifically pointed out that the schedule was the result of detailed studies and was adequate to meet the needs of approximately 95% of recipients, the remainder of whom were able to relocate to available affordable housing.

Plaintiffs claim that while this court considered the adequacy of the shelter grant schedule in *Matter of Weinhandler v Blum* (84 AD2d 716 [1st Dept 1981], *appeal withdrawn* 56 NY2d 649 [1982]) that case is limited by its facts, since the *Weinhandler* plaintiffs, in arguing that the 1975 rates should be revised to account for inflation, offered only a bare statistical claim that 23% of recipients paid rents above their shelter allowances; the record in *Weinhandler,* as in *Bernstein (supra),* contained evidence that apartments renting within the shelter allowance were available; and neither plaintiff in *Weinhandler* was threatened with eviction. In this regard, plaintiffs point to this court's language in *Weinhandler* (84 AD2d, at 717) that "we cannot agree on this record * * * that the essential standard of constitutional and statutory validity * * * has been violated." They maintain that the record before the motion court in this case contrasts starkly with that considered in *Weinhandler* in several respects: (1) while the number of homeless families in New York City in 1981 was fewer than 300, today the number exceeds 5,000; (2) the percentage of families in the city with rents in excess of their grants soared from 23% in *Weinhandler* to over 60% in 1987; and (3) even

after the 13% increase, the number by the city's own admission is approximately 45%.

Fourth, plaintiffs contend that their claim is justiciable since courts have a duty to enforce statutory mandates which may require the expenditure of funds, citing *Klostermann v Cuomo* (61 NY2d 525 [1984] [persons who were mentally ill and either released from institutions or ready to be released from institutions had stated a justiciable claim for residential placement, supervision and care and were entitled to a declaratory judgment stating their rights]) and *Matter of Dental Socy. v Carey* (61 NY2d 330 [1984] [Dental Society of the State of New York had standing to challenge the Medicaid dental fee reimbursement schedule as being contrary to applicable Federal regulations]). Plaintiffs contend that *Smith v Grinker* (NYLJ, Apr. 18, 1988, at 18, col 4 [Sup Ct, Bronx County]) relied upon by defendants, was wrongly decided. In that case on facts similar to those herein, Justice Katz of the Supreme Court denied a preliminary injunction and dismissed the petition, holding, under the authority of prior appellate court rulings, that in the absence of a showing that welfare benefits are merely token and not meaningful, the question of sufficiency of benefits is not justiciable and that emergency assistance authorized by Social Services Law § 350-j does not include the payment of rent arrears.

The State Commissioner argues that plaintiffs' constitutional and statutory claims as to the sufficiency of benefits to ADC recipients has been considered by the Court of Appeals and by this court, and rejected. The State first contends that its flat-grant system of relief for the needy was upheld against similar Federal and State constitutional challenges in *Matter of Bernstein v Toia* (43 NY2d 437 [1977], *supra), Matter of Weinhandler v Blum* (84 AD2d 716 [1st Dept 1981], *appeal withdrawn* 56 NY2d 649 [1982], *supra),* and *RAM v Blum* (77 AD2d 278 [1st Dept 1980], *appeal withdrawn* 54 NY2d 834 [1981]). He argues that plaintiffs have failed to show "a virtual exclusion of the needy from * * * support" *(RAM v Blum,* 77 AD2d, at 282) or that the aid provided is a "token or sham" *(RAM v Blum,* 77 AD2d, at 284), which showing is necessary for their constitutional challenge to succeed. Thus, any change in the cost of housing is irrelevant since the aid provided to plaintiffs' class, by their own admission, is not tantamount to a denial of all aid to the needy.

Moreover, the State defendant notes that since *Bernstein (supra)* was decided in 1977, the Legislature has significantly

increased the amount of discretionary income available to recipients by providing grants targeted at specific needs such as a Home Energy Allowance, amounting to as much as an additional 25% of the State-wide basic needs allowance. (Social Services Law § 131-a [3-c], [3-d].) The State defendant further points out that effective January 1988, the shelter allowance schedule was increased to a level sufficient to cover the full actual rents paid by 65% of public assistance households.[2]

 With respect to plaintiffs' statutory challenges, the State defendant argues that sections 350 and 344, relied upon by the motion court, were either explicitly considered in the prior decisions or are subordinate to Social Services Law § 131-a, which those decisions upheld. According to the defendant, the plaintiffs in both *RAM* and *Weinhandler (supra)* advanced the argument under section 350 that the flat shelter grant was inadequate for families with children. While the State Commissioner concedes that prior cases did not directly review section 344, he argues that the language of section 344 (3) that ADC aid shall be "administer[ed] * * * in accordance with state * * * requirements" subordinates that section to section 131-a.

Similarly, the State defendant contends that section 350 is subordinated to section 131-a by the clear language of section 350 (1) (a) in that the first sentence of section 350 (1) (a) requiring allowances to be adequate to bring up children properly is qualified by the words "in accordance with the provisions of section one hundred thirty-one-a of this chapter". Moreover, argues Perales, legislative expectation that ADC aid under section 350 (1) would not meet all of the recipients' legitimate needs is reflected in section 350 (5) which expressly contemplates seeking assistance from private sources "whenever the social services official is unable adequately to provide for their needs and the needs of their families."

Defendant Perales points to the legislative repeal of Social Welfare Law former § 344 in 1946 and replacement of it with Social Welfare Law § 344 (now Social Services Law § 344 [1]) as evidence of legislative intent to remove any requirement that ADC aid be sufficient for recipients to stay in their own homes. Social Welfare Law former § 344 (2) required that ADC

---

2. On April 27, 1989, the Welfare Reform Bill was enacted (L 1989, ch 77), which, *inter alia*, amended section 131-a (3) (a) to increase basic monthly welfare grants by approximately 19%, effective January 1, 1990.

grants be adequate to bring up children "in their own homes," whereas Social Services Law § 350 (1) now requires that aid be adequate "to bring up the child properly".

Finally, the State defendants argue that the issue is nonjusticiable because the amount of moneys available for shelter allowances to ADC families is a function of legislative appropriation. Defendant maintains that he is not seeking the right to set allowance levels capriciously "regardless of the consequences for children", as alleged by plaintiffs, and that he, in fact, has attempted to convince the Legislature to significantly increase the levels of shelter allowances. As a consequence, argues defendant, the Legislature, effective 1988, not only increased these levels but also directed defendant to conduct a study of the effect of such levels of assistance on homelessness. Moreover, argues the State defendant, the Legislature in its 1988 session, after reviewing a private study addressing the specific issue raised by this case (the relationship of shelter allowances to homelessness), did not direct him to increase current levels across the board as requested by plaintiffs. Rather the Legislature responded by creating a special cash grant program directed at homeless families with children in foster care. (L 1988, ch 542, amdg Social Services Law § 409-a [5].)

The City Commissioner disputes plaintiffs' claims that a significant amount of homelessness is directly caused by the level of shelter allowances (18 NYCRR 352.3 [a]) or that the level is inadequate but concedes plaintiffs' allegations are true for the purpose of the motion to dismiss.

The city defendant argues that the holdings in *Matter of Bernstein v Toia* (43 NY2d 37 [1977], *supra)* and *Matter of Weinhandler v Blum* (84 AD2d 716 [1st Dept 1981], *supra)* compel dismissal of the complaint herein as nonjusticiable. The city defendant contends that these cases firmly establish that the judiciary may not interfere with public assistance levels set by the Legislature or by the State Commissioner so long as the needy have not been impermissibly excluded from eligibility for benefits. Defendant maintains that the arguments raised by plaintiffs herein with respect to the adequacy of shelter allowances under Social Services Law § 350 (1) (a) are virtually identical to arguments made by petitioners in *Weinhandler* and rejected by this court.

The city defendant further argues that section 350 (1) (a) contains qualifying language which clearly subjects that sec-

tion to the constraints of section 131-a which is the Legislature's definitive statement on public assistance benefit levels.

Like the State defendant, he also contends that section 350 cannot be construed to require that all of a recipient's needs be met when subdivision (5) of that section clearly contemplates the existence of unmet needs, and that plaintiff's interpretation of section 350 (1) (a) creates a sharp contrast between that paragraph and other provisions of the Social Services Law (i.e., § 131 [1], [3]). Moreover, claims the city defendant, if the Legislature intended to mandate that benefit levels to families with dependent children be adequate to meet all needs (sufficient to raise children in their own homes), they would not have placed such a requirement in section 350 because that section merely applies to households receiving ADC. The term ADC refers to a Federally subsidized public assistance program and is available only to children in homes where at least one parent is absent or incapacitated and the child is living with the other parent or specified relative. (Social Services Law § 349 [B] [1]; 42 USC § 606 [a].) Indigent children residing with two parents receive aid through the New York City and State funded Home Relief program (Social Services Law § 157 *et seq.*) which program was providing aid to 33,000 of New York City's children in February 1988 (NY City Human Resources Admin, Off of Policy and Economic Research, *HRA Facts* [Mar. 1988]). Eligibility and basic benefit levels for both Home Relief and ADC are fixed at the same level by the Legislature in section 131-a (2) and (3). Shelter benefit levels for both forms of aid are set at the same level by the State defendant in 18 NYCRR 352.3. The city defendant thus contends that it is inconceivable that the Legislature would have singled out children receiving ADC for greater benefits than children receiving Home Relief.

Defendant Grinker further points out that in relying on the legislative history of section 350 (1) (a) plaintiffs ignore the 1969 amendment requiring allowances to be set "in accordance with the provisions of section one hundred thirty-one-a of this chapter and other applicable provisions of law." (L 1969, ch 184, § 15.) As a result of the more than six-fold increase in Public Assistance expenditures over a 10-year period, the Legislature at that time amended numerous sections of the Social Services Law governing benefits under cash assistance programs and making them subordinate to the restrictions of section 131-a and other provisions of law *(see,* L 1969, ch 184, § 11, *amdg* Social Services Law § 157 [1] [home

relief]; § 12, *amdg* Social Services Law former § 211 [1] [old age assistance]; § 13, *amdg* Social Services Law former § 286 [aid to the blind]; § 14, *amdg* Social Services Law former § 303 [1] [aid to the disabled]; § 15, *amdg* Social Services Law § 350 [1] [a] [aid to dependent children]).

The city defendant argues that the motion court misconstrued section 344 (2) which relates to the provision of "services" previously mandated by Federal ADC law, and not to cash grants.

The City Commissioner notes that the Legislature, in approving the recent 13% increase in shelter allowances, was aware that as a result of such increased allowances, the full rent of 65% of recipients would be met and yet it chose at that time not to insist on an increase which would meet the total rent cost for a greater percentage of recipients. Defendant maintains that the Legislature by such action explicitly recognized, in view of finite public funds and the number of compelling public interests, that the availability of public funds must temper society's desire "to provide adequately for those unable to maintain themselves". (Social Services Law § 131 [1].)

Finally, with respect to the out-of-State authorities cited by plaintiffs, the city defendant argues that the statutes involved in these cases differ from New York's. For example, in *Massachusetts Coalition for Homeless v Secretary of Human Servs. (supra)* the statute required that the aid furnished "be sufficient to enable such parent to bring up such child or children properly in his or her own home" and required the State administrative agency to " 'formulate a standard budget of assistance, the adequacy of which shall be reviewed annually.' " (400 Mass, at —, 511 NE2d, at 608, including n 6.)

### MOTION TO DISMISS

In deciding the motion to dismiss, this court accepts as true all the factual allegations of the petition. *(Schuster v City of New York,* 5 NY2d 75, 80 [1958].)

First, it is clear that the Legislature bears primary responsibility for providing for the needy, including shelter allowances. Legislative authority to provide aid to the impoverished citizens of New York is found in article XVII, § 1 of the NY Constitution which states: "The aid, care and support of the needy are public concerns and shall be provided by the state

and by such of its subdivisions, and in such a manner and by such means, as the legislature may from time to time determine."

The Legislature through the Social Services Law has established "the standard of monthly need * * * determining eligibility for all categories of assistance * * * by * * * social services districts". (Social Services Law § 131-a [2] [a].)[3] There are two main components of any public assistance grant: a basic grant and a shelter allowance. The Legislature has set forth a schedule of the maximum monthly benefits to be paid as a basic grant. (Social Services Law § 131-a [3], [3-c], [3-d].) In addition, the Legislature has authorized the State Commissioner to provide separate and additional amounts for shelter costs. *(See,* Social Services Law § 131-a [1]; *Matter of Bernstein v Toia,* 43 NY2d 437, 446-447 [1977], *supra.)* In this regard, Social Services Law § 131-a (1) provides: "social services officials shall, in accordance with the provisions of this section and regulations of the department, provide home relief, veteran assistance and aid to dependent children, to needy persons * * * who are determined to be eligible in accordance with standards of need established in subdivision two. Provision for such persons * * * shall be made in accordance with this section * * * within the limits of the schedules included in subdivision three * * * except for additional amounts which shall be included therein for shelter".

Accordingly, pursuant to section 131-a (1), the State Commissioner in 1975 promulgated 18 NYCRR 352.3 (a)[4] to provide that public assistance recipients receive shelter allowances in the full amount of their actual rents, up to maximum

---

3. In 1981, the Legislature added a home energy grant equal to 15% of the monthly basic grant. (Social Services Law § 131-a [3-c].) Effective January 1986 the Legislature added a supplemental home energy grant which effectively further increased monthly basic grants by amounts ranging from $11 for one-person households to $42 for six-person households. (Social Services Law § 131-a [3-d].) By Laws of 1989 (ch 77) (eff Jan. 1, 1990), the basic monthly grant will be increased by approximately 19%.

4. Prior to 1975 each local district was permitted to set its own shelter allowance. In 1984, the allowance was increased an average of 25% adding approximately $135 million to the more than $1 billion spent annually on shelter allowances State-wide. Effective January 1988 shelter allowance maxima in New York City, for apartments where heat is included in rents, are under 18 NYCRR 352.3 (a) as follows:

| Family Size | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8+ |
|---|---|---|---|---|---|---|---|---|
| Maximum Allowance | $215 | 250 | 286 | 312 | 337 | 349 | 403 | 421 |

amounts prescribed for each local district. These shelter allowance maxima were increased by approximately 26% in 1984 and again, effective January 1988, by an average 13% (ranging from 10 to 15%) as a partial adjustment for inflation. It is these shelter allowance maxima which are herein challenged by plaintiffs.

Second, our courts have repeatedly upheld the method chosen by the Legislature to provide shelter allowances to needy persons. Shortly after the State Commissioner first promulgated the schedule of State-wide shelter allowance maxima, the Court of Appeals in *Matter of Bernstein v Toia (supra)* upheld this flat rate concept of administering shelter allowances as constitutional (NY Const, art XVII, § 1) and consistent with Social Services Law § 131-a (1). All three elderly or disabled petitioners in *Matter of Bernstein* were New York City residents and recipients of public assistance whose shelter allowances had been reduced as a result of the State Commissioner's promulgation of 18 NYCRR 352.3 (a). Under the practice which had existed prior to the promulgation of that regulation, their rent grants were approved by the Social Services Commission by reason of their special circumstances. The *Bernstein* plaintiffs argued that in failing to take into consideration their special circumstances and their actual rents, the Commissioner had violated Social Services Law § 131-a and section 1 of article XVII of the NY Constitution and deprived them of equal protection and due process under both Federal and State Constitutions. In dismissing the petition the Court of Appeals in *Bernstein* noted that the Legislature explicitly intended in creating section 131-a in 1969 to substitute a flat-grant system for the more costly and cumbersome individually constructed assistance grants as a result of the "spiraling rise of public assistance rolls and the expenditures therefor" (L 1969, ch 184, § 1), and that in doing so the Legislature realized that a flat-grant system would be inadequate to meet the total needs of all recipients. *(Matter of Bernstein v Toia, supra,* 43 NY2d, at 444.)

In addressing the article XVII, § 1 claim the court in *Matter of Bernstein* stated: "We do not read this declaration and precept as * * * commanding that, in carrying out the constitutional duty to provide aid, care and support of the needy, the State must always meet in full measure all the legitimate needs of each recipient. When, as here, the over-all consequence of the method of distribution of aid * * * is reasonably expected to be in furtherance of the optimum utilization of

public assistance funds, there has been no violation of the constitutional command. * * * 'the * * * Constitution mandates only that the "needy" * * * be afforded aid and support "in such manner and by such means, as the Legislature may from time to time determine." ' * * * '[T]he provision for assistance to the needy is not a matter of legislative grace; rather, it is specifically mandated by our Constitution.' *(Tucker v Toia,* 43 NY2d 1, 7.) This principle relates, however, to questions of impermissible exclusion of the needy from eligibility for benefits, not to the absolute sufficiency of the benefits distributed to each eligible recipient. We explicitly recognized in *Tucker* that the Legislature is vested with discretion to determine the amount of aid" *(supra,* at 448-449).

Under the constraints of *Matter of Bernstein v Toia (supra)* and *Tucker v Toia* (43 NY2d 1 [1977]), this court has held that "the adequacy of the level of welfare benefits is a matter committed to the discretion of the Legislature." *(McCain v Koch,* 117 AD2d 198, 216 [1st Dept 1986], *revd on other grounds* 70 NY2d 109 [1987]; *Matter of Lamboy v Gross,* 126 AD2d 265, 267 [1st Dept 1987]; *Matter of Weinhandler v Blum,* 84 AD2d 716 [1st Dept 1981], *appeal withdrawn* 56 NY2d 649 [1982], *supra.)*

In *Matter of Weinhandler v Blum (supra),* petitioners in 1979 sought to enforce the right to an "adequate shelter allowance" under article XVII and, *inter alia,* section 350 (1) (a) of the Social Services Law, alleging that more than 23% of public assistant recipients paid rents in excess of their shelter allowances. The motion court ordered that motions to dismiss the petition be held in abeyance pending a trial to determine, *inter alia,* the number of recipients whose rental costs exceeded the maximum shelter allowance. This court on appeal from such order reversed and dismissed the petition, stating: "The principal distinction urged [by petitioners] is that in *Matter of Bernstein (supra),* the Court of Appeals observed that the shelter allowance schedule would fully meet the rental needs of about 95% of the recipients and that following that decision there has been a steady increase in rents payable by welfare recipients without any corresponding increase in the allowances. Although this development undoubtedly imposes hardships on many welfare receipients, we cannot agree on this record, accepting in full petitioner's statistical contentions, that the essential standard of constitutional and statutory validity set forth in *Bernstein* has been violated" *(supra,* 84 AD2d, at 717).

Similarly, in *RAM v Blum* (77 AD2d 278 [1st Dept 1980], *appeal withdrawn* 54 NY2d 834 [1981], *supra)* wherein the petitioners contended that welfare assistance levels prescribed by section 131-a violated their State and Federal constitutional rights because the statute lacked a methodology for adjusting benefit levels to account for inflation and failed to meet basic subsistence levels, this court affirmed dismissal of the complaint. We held that the burden of establishing and maintaining public assistance is vested in the Legislature and that the case was, therefore, nonjusticiable. The late Justice Sandler, in a concurring opinion, expressed his view that the case was justiciable, but that the State Constitution does not require that the Legislature "provide sufficient aid for the needy to meet all essential needs". *(RAM v Blum, supra,* 77 AD2d, at 283.)* In the opinion of Justice Sandler, the State Constitution should be "reasonably interpreted" to require only that the assistance "be genuine and meaningful, and not merely token or sham" *(supra,* at 284).

More recently, in *McCain v Koch* (70 NY2d 109 [1987], *supra)* the Court of Appeals was faced with the question of whether a court could issue a preliminary injunction requiring that the New York City Department of Social Services, in providing emergency shelter to homeless families with children, ensure that such emergency shelter satisfies minimum standards of sanitation, safety and decency. The court did not reach the question of whether the State and Federal Constitutions guarantee such emergency shelter or whether they substantially guarantee maintenance of minimum standards in such shelters. Rather, it merely determined that once the departments had undertaken to provide emergency shelters to the homeless, they could be required to make these shelters minimally habitable *(supra,* 70 NY2d at 118). In *McCain v Koch,* the court clearly distinguished the facts therein from those in *Matter of Bernstein v Toia (supra)* stating that while the plaintiffs in *Bernstein* "sought to have the court substitute its judgment" for amounts in the duly promulgated shelter allowance regulation, in *McCain v Koch,* "[i]t was because of the absence of any departmental regulation that it was necessary for the court to establish its own minimum standards." (70 NY2d, at 119, 120.) The Court of Appeals in *McCain v Koch* concluded that "[t]herefore, the [motion court's] order involved no encroachment on the legislative or executive prerogative." (70 NY2d, at 120.)

Under constraint of *Tucker v Toia (supra), Matter of Bern-*

*stein v Toia (supra)* and their progeny, plaintiffs' challenge must fail unless, as claimed, the Social Services Law contains a specific statutory mandate that allowances to families receiving ADC be adequate to raise children in their homes.

Third, in order for plaintiffs to prevail in their contention that the Legislature has mandated that families with children receive shelter allowances above those authorized by the State Commissioner and in accordance with their actual rents, they must make a clear showing that the Legislature so intends. We agree with the IAS court that no such mandate can be found in the language of Social Services Law § 131 (authorizing social service officials to provide for the needy); § 131-a (authorizing social service officials to provide monthly grants); and § 350-j (authorizing social service officials to give emergency assistance to the needy).

■ We conclude, however, that the motion court erred in finding in Social Services Law § 350 (1) (a) and § 344 (2) a legislative mandate to provide shelter allowances above those directed by the State Commissioner and equal to the actual rents being charged to the plaintiffs.

Section 350 falls within article 5, title 10 of the Social Services Law which governs Aid to Dependent Children. Section 350 (1) (a) states in relevant part: "Allowances *shall be adequate* to enable the father, mother or other relative to bring up the child properly, having regard for the physical, mental and moral well-being of such child, *in accordance with the provisions of section one hundred thirty-one-a of this chapter and other applicable provisions of law.* Allowances shall provide for the support, maintenance and needs of one or both parents if in need, and in the home" (emphasis added).

Clearly, the language "shall be adequate" is qualified by the reference to section 131-a and other appropriate provisions. Section 131-a (1), the Legislature's definitive statement on public assistance benefit levels, states in part: "Any inconsistent provision of this chapter or other law notwithstanding, social services officials shall, *in accordance with the provisions of this section and regulations of the department,* provide home relief, veteran assistance and aid to dependent children, to needy persons * * * determined to be eligible * * *. Provision for such persons, for all items of need * * * shall be made in accordance with this section."

The reference in section 350 (1) (a) to section 131-a and other applicable provisions of law was a result of a 1969

amendment to sections of the Social Services Law (L 1969, ch 184, § 15) arising out of the Legislature's finding that "[t]he spiraling rise of public assistance rolls and the expenditures therefore * * * have become matters of primary social and economic concern". (L 1969, ch 184, § 1.) The Legislature at that time amended numerous sections of such law governing the "character and adequacy" of benefits under cash assistance programs, making all of them subordinate to section 131-a and other provisions of law (e.g., L 1969, ch 184, § 11, *amdg* § 157 [1] [home relief]; § 12, *amdg* former § 211 [1] [old age assistance]; § 13, *amdg* former § 286 [aid to the blind]; § 14, *amdg* former § 303 [1] [aid to the disabled, repealed by L 1974, ch 1080]; § 15, *amdg* § 350 [1] [a] [aid to dependent children]).

These amendments demonstrate that the level of assistance is controlled, not by the old "character and adequacy" statutes scattered throughout the Social Services Law, but by section 131-a and other general provisions of such law. One such provision is section 131 which states in part:

"1. It shall be the duty of social services officials, *insofar as funds are available for that purpose,* to provide adequately for those unable to maintain themselves * * *

"3. As far as possible families shall be kept together * * *. *Whenever practicable,* assistance and service shall be given a needy person in his own home" (emphasis added).

■ Nor is there merit in the contention that the Legislature by using "shall" in section 344 (2) and section 350 (1) (a) of article 5, title 10 of the Social Services Law singled out dependent children as a priority group to receive public aid adequate to meet all of their shelter needs. Had the Legislature chosen to do so, it would have been inappropriate to do so in sections 344 and 350 since title 10 does not apply to all public assistance households with children. Title 10 applies only to those children receiving ADC and not to the more than 33,000 children in New York City, receiving public assistance through Home Relief.

■ The IAS court also misconstrued section 344 (2) which provides in relevant part: "2. Aid [to dependent children] shall be construed to include * * * those *services* which may be necessary for each child in the light of the particular home conditions and his other needs." (Emphasis added.) By its own terms, that statute relates to supportive services, not to cash allowances.

## CLASS CERTIFICATION

■ As this court recently stated in *McCain v Koch* (117 AD2d 198, 221, *supra)* "Class certification is superfluous where, as here, the record does not evidence any unwillingness on the part of respondent government official to comply with and apply court rulings equally to all persons similarly situated." At issue in this case is the legality of certain regulations of the State Commissioner. There is no allegation that these regulations have been arbitrarily applied. Further, it is presumed that if plaintiffs were ultimately successful in this act the defendant Commissioners would establish appropriate regulations and implement them in a fair and uniform manner. Should they fail to do so, the rights of subsequent litigants will be adequately protected under the principles of stare decisis. *(Matter of Jones v Berman,* 37 NY2d 42, 57 [1975].)

## THE CITY COMMISSIONER AS A PARTY

■ The City Commissioner "is neither a necessary nor an appropriate party to this litigation." *(Matter of Weinhandler v Blum, supra,* 84 AD2d, at 717; *Joanne S. v Carey,* 115 AD2d 4, 9 [1st Dept 1986].)* The shelter allowance schedule and the policy prohibiting payment of rent arrears in excess of allowances are embodied in regulations promulgated by the State Commissioner. (18 NYCRR 352.3 [a]; 352.7 [g].) The City Commissioner is commanded by statute to follow such standards *(see,* Social Services Law §§ 17, 20, 34; *McCain v Koch, supra,* 70 NY2d, at 120) and may not substitute his judgment for that of the State Commissioner. *(Matter of Beaudoin v Toia,* 45 NY2d 343, 347 [1978].)

## PLAINTIFFS' CROSS APPEAL

Plaintiffs urge on their cross appeal that the IAS court erred in failing to deny the motion to dismiss in its entirety.

■ Specifically, they claim that the motion court erred in rejecting the plaintiffs' claims for relief under Social Services Law § 131 (3) (which provides in part that "As far as possible families shall be kept together," and that "[w]henever practicable, assistance and service shall be given a needy person in his own home"); under Social Services Law § 131-a (which sets forth the statutory scheme for monthly grants and allowances) and under Social Services Law § 350-j and 18 NYCRR part 372 (which provide for emergency assistance to families with

children). While the court's order did not include dismissal of these claims, they were dismissed in the IAS court's decision. We find the dismissals to be proper. To the extent that plaintiffs raise claims under NY Constitution, article XVII, § 1 and under the Due Process and Equal Protection Clauses of both the US and NY Constitutions, these claims are denied.

Accordingly, the order entered on or about March 16, 1988 and amended order dated June 15, 1988 and entered June 16, 1988 of the Supreme Court, New York County (Karla Moskowitz, J.), should be revised, on the law and the facts, the defendants' motions to dismiss granted and the complaint dismissed, without costs.

KUPFERMAN, J. P., SULLIVAN, ROSS and CARRO, JJ., concur.

Order, Supreme Court, New York County, entered on or about March 16, 1988, as amended on June 16, 1988, unanimously reversed, on the law, without costs and without disbursements, the defendants' motion to dismiss granted and the complaint dismissed.