In the Matter of MID ISLAND THERAPY ASSOCIATES, LLC, Doing Business as ALL ABOUT KIDS, Appellant, v NEW YORK STATE DEPARTMENT OF EDUCATION, Respondent. [952 NYS2d 658]—

Stein, J.

Petitioner provides special education itinerant teaching (hereinafter SEIT) services for preschool age children with disabilities in Westchester, Nassau and Suffolk Counties (hereinafter collectively referred to as the Counties) and the New York City metropolitan area. Petitioner's services are measured in 30-minute "service units," for which petitioner is paid by the New York City Department of Education (hereinafter NYCDOE) and the Counties (see generally Education Law § 4410 [9]). Petitioner is initially paid by a municipality for each service unit according to the "prospective rate," which is set prior to the relevant school year and is established by, among other things, the tuition rate established for prior years. After the conclusion of the school year, a final "reconciliation rate" is calculated by respondent following petitioner's submission of financial statements certified by a licensed or certified public accountant[1] and documentation demonstrating its actual costs, as well as submission by the Counties and NYCDOE of their own reports identifying, among other things, the number of service units for which payment was made to petitioner (see generally 8 NYCRR 200.9 [a] [20]; [e]).[2] The Counties and NYCDOE are reimbursed by respondent for a percentage of approved costs paid by them to petitioner in accordance with the reconciliation rate (see generally Education Law § 4410 [11]).

---

1. Pursuant to respondent's regulations, petitioner is required to provide these detailed accounting and financial reports, and tuition rates are to be based upon the reports prescribed by the Commissioner of Education (see 8 NYCRR 200.9 [d], [e], [f]). The certified financial reports submitted by petitioner for the 2007-2008 school year were prepared by an outside financial consultant and were audited, as required, by an independent certified public accountant (see 8 NYCRR 200.9 [e]).

2. The final reconciliation rate calculation requires that the total costs be divided by the total number of service units.

For the 2007-2008 school year, the Counties and NYCDOE reported a total of 100,669 service units, as compared with the 87,907 units reported by petitioner.[3] This difference, together with certain disallowances made for petitioner's legal and human resources expenses, led respondent to calculate the reconciliation to be $44 per service unit, in contrast to the prospective rate of $49 per service unit that petitioner had been paid for that school year. The final reconciliation rate was published by respondent on February 15, 2011. Since petitioner had already been paid according to the higher prospective rate, it was overpaid a total of approximately $500,000, which petitioner now owes to the Counties and NYCDOE (see generally 8 NYCRR 200.09 [f] [3] [iii] [b]).

Petitioner commenced this proceeding, challenging respondent's certification of the reconciliation rate as being arbitrary and capricious, lacking a rational basis, an abuse of discretion and contrary to law. Respondent asserted in its answer, among other things, that petitioner failed to join the Counties and NYCDOE as necessary parties. Supreme Court agreed and dismissed the petition, finding that the Counties and NYCDOE may be inequitably affected by any determination on the merits. Nevertheless, the court also concluded that the methodology used by respondent to calculate the reconciliation rate had a rational basis and was neither arbitrary nor capricious. Petitioner now appeals.[4]

We first address petitioner's contention that NYCDOE and the Counties were not necessary parties. A necessary party is one "who might be inequitably affected by a judgment in the action" (CPLR 1001 [a]; accord Petti v Town of Lexington, 92 AD3d 1111, 1115 [2012]; see Matter of Gleason v Town of Clifton Park Planning Bd., 90 AD3d 1205, 1206 [2011]). It is well established that, "in the context of governmental policies and programs which inevitably entail the involvement of numerous agencies, departments and officials, only those governmental entities that are primarily responsible for the challenged policy are necessary parties" (Joanne S. v Carey, 115 AD2d 4, 9 [1986]; accord Matter of N.J. Koss, Inc. v Regan, 149 AD2d 785, 787 [1989]; see Matter of Board of Educ. of Roosevelt Union Free School Dist. v Board of Trustees of State Univ. of N.Y., 282 AD2d 166, 174 [2001]).

---

**3.** The petition alleges that the most significant discrepancies arose from units reported by NYCDOE.

**4.** This Court granted petitioner's motion to stay enforcement of the judgment pending appeal (Matter of Mid Is. Therapy Assoc., LLC v New York State Dept. of Educ., 2012 NY Slip Op 66064[U] [2012]).

In the instant matter, respondent is solely responsible for setting the reconciliation rate applicable to petitioner. Moreover, there appears to be no dispute that the aim of the rate determination process is to accurately and fairly pay entities such as petitioner for the SEIT services they provide. NYCDOE and the Counties have no statutory or regulatory authority concerning respondent's determination of the reconciliation rate, nor any discretion with regard to the rate that they pay petitioner for the services provided—they simply implement the rate set by respondent (*see Jiggetts v Grinker*, 148 AD2d 1, 20 [1989], *revd on other grounds* 75 NY2d 411, 414 [1990]). While Supreme Court's determination in this proceeding may have some fiscal effect on the Counties and NYCDOE, we are of the view that, under the circumstances here, their interests will not be "inequitably" affected within the meaning of CPLR 1001 (*see generally Matter of Castaways Motel v Schuyler*, 24 NY2d 120, 125 [1969]; *Matter of Spinney Hill Collision v Caso*, 56 AD2d 655, 655 [1977]). Thus, Supreme Court erred in determining that they were necessary parties (*see Matter of N.J. Koss, Inc. v Regan*, 149 AD2d at 787; *Jiggetts v Grinker*, 148 AD2d at 20).[5]

We now turn to the merits of petitioner's arguments. We begin with petitioner's contention that respondent erred in failing to accept the results of an audit completed by the Comptroller in establishing petitioner's tuition rates. Pursuant to the regulations governing respondent's rate calculation, where, as here, an entity is subject to a fiscal audit by the Comptroller (*see* 8 NYCRR 200.18 [a]), "[a] final audit report shall be issued for each such audit . . . [which] shall be used to establish tuition rates . . . [which] shall be developed by the [C]ommissioner [of Education]" (8 NYCRR 200.18 [c] [1]). Accordingly, the Commissioner's otherwise broad discretion in setting the reconciliation rate is curtailed where the service provider has been audited by the Comptroller.

In this case, the Comptroller's office conducted an extensive audit of the fiscal and enrollment data contained in petitioner's certified financial report, which encompassed comprehensive information regarding SEIT services including, among other things, the number of service units provided. The objective of the audit, as articulated by the Comptroller's office, "was to as-

5. Although the Counties and NYCDOE may, in fact, have information pertinent to this proceeding and their participation as witnesses may be necessary (*see Matter of N.J. Koss, Inc. v Regan*, 149 AD2d at 787), the record reflects that they were fully aware of petitioner's commencement of this proceeding. Therefore, if they wished to be heard, they could have moved to intervene (*see* CPLR 1012, 1013).

sess the propriety, justification and support for [petitioner's] reimbursed claims." The audit resulted in a letter from the Comptroller's office to the Commissioner of Education, which indicated that "no significant findings" were made with regard to petitioner's reimbursement claims and, accordingly, that no formal *public* report would be issued.

Based upon our review of other audit reports on the Comptroller's website (*see* www.osc.state.ny.us/audits [accessed Oct. 11, 2012]), it appears that detailed reports are issued and made public only in those cases where the Comptroller has determined that costs and expenses set forth on a provider's certified financial report were either improperly calculated, inadequately documented and/or not allowable under the Reimbursable Cost Manual generated by respondent. This is in direct contrast to the letter in the record before us, which indicates that the Comptroller's office found no significant improprieties with respect to petitioner's financial reports and claims for reimbursement. Nor does respondent provide any evidence to the contrary. Accordingly, in our view, that letter constituted the Comptroller's final audit report and respondent was, therefore, bound to accept the data provided by petitioner in establishing its tuition rates.

The parties' remaining contentions, to the extent that they are not specifically addressed herein, have been considered and are either academic or without merit.

Peters, P.J., Lahtinen, Garry and Egan Jr., JJ., concur. Ordered that the judgment is reversed, on the law, without costs, determination annulled, and matter remitted to respondent for further proceedings not inconsistent with this Court's decision.