OPINION OF THE COURT
Hancock, Jr., J.
This appeal concerns the power of Supreme Court to fashion equitable relief. The sole issue is whether the court has power to issue a preliminary injunction requiring New York City Departments of Social Services (DSS) and Housing, Preservation and Development (HPD), when they have undertaken to provide emergency housing for homeless families with children, to provide housing which satisfies minimum *114 standards of sanitation, safety and decency. We hold that Supreme Court has such power. Accordingly, that part of the order of the Appellate Division which vacated the preliminary injunction issued by Supreme Court should be reversed and the case remitted to the Appellate Division for further proceedings.
I
The appeal involves a portion of one of five separate orders of Supreme Court reviewed at the Appellate Division in consolidated appeals (see, McCain v Koch, 117 AD2d 198) in litigation pertaining to various aspects of the immensely difficult human, social and governmental problems presented in New York City and other large urban areas by the plight of homeless destitute families with children.[1] Plaintiffs who sought and obtained the injunction are destitute families who have been granted and are receiving emergency housing aid (127 Misc 2d 23).[2] In their complaint seeking an order compelling defendants to provide them with “safe, suitable and adequate emergency housing”, plaintiffs describe specific conditions encountered by families lodged in hotels and motels[3] including instances of rooms without furniture, bedding or appliances, apartments without adequate heat, hot water, plumbing or electricity, and unguarded buildings infested with rodents and vermin and plagued with crime. Defendants reject any suggestion that they are indifferent to the plight of the homeless and cite, among other documents, the 1987 Report of the Mayor’s Advisory Task Force on the Homeless as evidence that the City is doing "a ’creditable job’ in what the Advisory Task Force described as the ’monumental task’ of housing and feeding a homeless population which has now grown to 27,000 *115 people” (respondent’s brief, at 5). Plaintiffs reject these conclusions and assert that defendants still do not provide "emergency housing that meets the most basic standards of civilized society” (appellant’s reply brief, at 1).
The order (Sup Ct, NY County, entered June 27, 1984) which the Appellate Division modified grants a preliminary injunction to plaintiffs compelling defendants to provide emergency housing conforming to minimal standards. The limited question certified to us by the Appellate Division is whether it properly modified that order on the law by denying the motion for a preliminary injunction and vacating the provision granting it.
The injunction of June 27, 1984 does not direct defendants to provide housing where none is being provided. It applies only '[w]hen a family is not denied emergency housing, assistance and services” (emphasis added). Its provisions, insofar as they prescribe minimal standards, are:
"DSS and HPD shall, arrange so far as is practicable in the placement in emergency housing, that such housing:
"a. contains a bed for each family member, or a crib in the case of an infant, with a clean mattress and pillow and with clean and sufficient sheets and blankets;
"b. contains a sufficient number of clean towels;
"c. contains sufficient space for the family based on City laws governing residential units [citation omitted];
"d. has accessible to it a sanitary bathroom with hot water;
"e. is sufficiently heated pursuant to City law;
"[f]. contains basic furniture essential for daily living;
"[g]. has window guards as required by the laws governing residential multiple dwellings;
"[h]. has locks on the emergency housing unit’s outside doors”.
These minimum standard provisions were first imposed by Supreme Court on June 20, 1983 as an interim order and subsequently continued in effect by the order of June 27, 1984. It is significant that approximately three and one-half months after the issuance of the June 20, 1983 interim order, the substance of the minimum standards in the injunction was included in more rigorous departmental regulations for hotels and motels used for emergency housing promulgated by the Commissioner of Social Services (18 NYCRR 352.3 [g], eff Oct. 6, 1983).
*116 The Appellate Division vacated the injunction "reluctantly” on constraint of our decision in Matter of Bernstein v Toia (43 NY2d 437). In concluding that under Bernstein "the adequacy of the level of welfare benefits is a matter committed to the discretion of the Legislature” (117 AD2d, at 216) and that it was, therefore, "unable to afford the plaintiffs complete and meaningful relief” (id.), the Appellate Division commented (at 216): "The inability of courts to set even minimum standards for meeting 'the legitimate needs of each recipient’ (see, Matter of Bernstein v Toia, supra, at p 449) upon the failure of the Legislature to do so is discouraging, saddening, and disheartening.”
For reasons which follow, we now reverse. The certified question is answered in the negative.
II
There is no question that in a proper case Supreme Court has power as a court of equity to grant a temporary injunction which mandates specific conduct by municipal agencies (see, CPLR 6301; Bachman v Harrington, 184 NY 458, 462-464; Tucker v Toia, 54 AD2d 322, 324-326; Graham v Board of Supervisors, 49 Misc 2d 459, mod on other grounds 25 AD2d 250-254, appeal dismissed 17 NY2d 866; 7A Weinstein-KornMiller, NY Civ Prac fí 6301.06; 12 Carmody-Wait 2d, NY Prac § 78:24; 17 McQuillin, Municipal Corporations § 49.50 [3d rev ed]; see also, Klostermann v Cuomo, 61 NY2d 525, 530-531; and Matter of Jones v Berman, 37 NY2d 42, 57 [both involving mandatory relief in CPLR art 78 proceedings]; Lexington & Fortieth Corp. v Callaghan, 281 NY 526, 530-532 [involving permanent mandatory injunction]). Defendants contend, however, that notwithstanding the power of Supreme Court to grant injunctive relief, it could not lawfully do so here. They advance three main reasons.
A
Defendants argue that the issue of Supreme Court’s power to grant the injunction (contained originally in the interim order of June 20, 1983 and continued in the order of June 27, 1984) became moot when the Department of Social Services adopted the substance of the injunction standards in promulgating its own more detailed and stringent minimum standards for hotels/motels used as emergency housing to be effective on October 6, 1983 (18 NYCRR 352.3 [g]). They claim *117 that plaintiffs, with the Commissioner’s adoption of these regulations, have, in effect, won their lawsuit and that consideration of questions concerning the court’s power to grant the injunction is now unnecessary. Defendants overlook a cardinal point. It is not the words of the standards, whether in the injunction or the regulations, but compliance with them which will produce the minimally adequate housing to which these plaintiffs are entitled. Because the Appellate Division concluded, as a matter of law, that Supreme Court lacked power to establish minimum standards of habitability, it did not pass on the issues pertaining to defendants’ alleged noncompliance with the standards or to the need for and propriety of the court’s injunction compelling such compliance (CPLR 6301). Until such questions have been judicially addressed and resolved, plaintiffs’ action seeking injunctive relief cannot be moot.
B
Defendants contend next that they have no legal obligation to provide plaintiffs "with any emergency housing” under State or Federal constitutional or statutory law. Without such underlying obligation, the argument goes, there can be no substantive basis for an injunction compelling compliance with minimum standards. The argument misconstrues the scope and effect of the order before us. The injunction stands or falls irrespective of the existence of such underlying obligation; it benefits only those families who have qualified for and are receiving emergency housing aid and the direction that the housing must meet prescribed minimum standards applies only when DSS and HPD have undertaken to provide the housing.
The Appellate Division recognized this limited application of the June 27, 1984 injunction in its characterization of Supreme Court’s action in granting it: "Without reaching the constitutional and statutory issues, except to note the absence of an explicit mandate, Justice Greenfield held (p 24) 'once the defendants have undertaken to provide emergency shelter, whether for 30 days pursuant to AFDC, or beyond, instead of providing direct cash grants’, defendants must ensure that the shelter meets 'minimal standards of cleanliness, warmth, space and rudimentary conveniences’. The court invoked its equitable powers to compel compliance with reasonable minimum standards, reasoning (p 25) that the homeless as 'interim *118 wards of a governmental entity’ are entitled to no less than convicted criminals.” (117 AD2d, at 208.)
The right of eligible families who are not receiving emergency housing to compel defendants to furnish it is the issue in other parts of the Appellate Division’s order not before us on this appeal.[4] Thus, to decide the narrow issue here, it is not necessary to resolve questions pertaining to the underlying obligation to furnish "emergency shelter to eligible homeless families with children” (117 AD2d, at 222). We do not reach them.
Nor do we address the additional ground of the Appellate Division for denying injunctive relief: that in view of our decision in Matter of Bernstein v Toia (43 NY2d 437, supra), plaintiffs are not likely to "prove that [NY Const] article XVII substantively guarantees minimal physical standards of cleanliness, warmth, space and rudimentary convenience in emergency shelter.” (117 AD2d, at 217.) Because we hold that, whether or not plaintiffs have any right to shelter under State or Federal constitutional or statutory law, Supreme Court had the power to require defendants, once they undertook to provide housing, to make that shelter minimally habitable, we conclude that Bernstein poses no bar to the grant of injunctive relief in this case. Moreover, when defendants undertake to provide emergency housing, they must now comply with the State departmental regulations (18 NYCRR 352.3 [g], [h]; see, part II [C], at 119-120, infra), and thus, so long as the regulations are in effect, no question can exist concerning the minimum standards for the accommodations to be provided.
*119 c
Finally, defendants, citing Klostermann v Cuomo (61 NY2d 525, supra), Jones v Beame (45 NY2d 402) and Matter of Bernstein v Toia (43 NY2d 437, supra), maintain that Supreme Court in setting and enforcing minimum standards for emergency housing has violated the principle that a court should, as a matter of policy, "abstain from venturing into areas if it is ill-equipped to undertake the responsibility and other branches of government are far more suited to the task” (Jones v Beame, supra, at 409). Under this rule, defendants argue, plaintiffs’ claims are not justiciable. Thus, defendants adopt the essential reasoning of the Appellate Division in its conclusion that, on the authority of Bernstein v Toia (supra), it was bound to vacate the injunction because the "adequacy of the level of welfare benefits is a matter committed to the discretion of the Legislature” (117 AD2d, at 216).
Matter of Bernstein v Toia (supra) may be readily distinguished. There, the petitioners challenged the flat grant concept of maximum shelter allowances established by the Commissioner of Social Services pursuant to specific statutory authority (Social Services Law § 20 [2] [a]; [3] [d]; § 131-a) and sought to have the court substitute its judgment on a case-by-case, basis for the amounts of the standard shelter allowances set out in the schedule (18 NYCRR 352.3 [a]). In holding that the courts lacked power to grant the relief sought we said, "it is the responsibility of the Department of Social Services, as the body charged with the administration of all forms of social services and empowered to establish rules, regulations and policies to carry out its duties (Social Services Law, § 20, subd % par [a]; subd 3, par [d]), to implement the provisions of section 131-a. The regulation reflecting the choice made by the department, employing what is effectively a flat grant concept for shelter allowances, is beyond our power to disturb unless it is 'so lacking in reason for its promulgation that it is essentially arbitrary. ’ (Matter of Marburg v Cole, 286 NY 202, 212.)” (43 NY2d, at 448; emphasis added.)
Here, in contrast to Bernstein, when Supreme Court first imposed minimum standards on June 20, 1983, as part of its interim order, there could be no conflict with a departmental regulation. No applicable regulation existed. Supreme Court decided that defendants, having undertaken to provide the homeless with emergency shelter, were obliged to furnish shelter meeting minimum standards. It reasoned that "[i]n a *120 civilized society, a 'shelter’ which does not meet minimal standards of cleanliness, warmth, space and rudimentary conveniences is no shelter at all” (127 Misc 2d, at 24; emphasis added) and that in providing subminimum shelter the defendants were, in effect, denying any relief to the homeless in contravention of their statutory and constitutional obligation (see, Tucker v Toia, 43 NY2d 1, 9). It was because of the absence of any departmental regulation that it was necessary for the court to establish its own minimum standards. Having done so, the court invoked its equitable powers to compel compliance. Therefore, the June 20, 1983 order involved no encroachment on the legislative or executive prerogative. Nor did Supreme Court’s later action on June 27, 1984 when it continued the June 20, 1983 minimum standards as part of the preliminary injunction which is now at issue. While as noted, the Commissioner had in the interim promulgated his own standards (18 NYCRR 352.3 [g], [h]), there could be no conflict because his regulations are more extensive and stringent than the injunction.
With the adoption of the departmental regulations (18 NYCRR 352.3 [g], [h]), there can be no question about the minimum level of habitability which defendants now must meet when they undertake to provide emergency housing. These regulations, which subsume the more general and less rigorous standards in the court order, are, by their terms, binding on local social services districts (18 NYCRR 352.3 [h]). Defendants, in arguing that the adoption of the departmental regulations has mooted the issue of Supreme Court’s power to grant the injunction, have necessarily conceded that they must follow these departmental standards. Indeed, they are commanded by statute to do so (see, Social Services Law § 20 [2] [a], [b]; [3] [a], [d], [f]; § 34 [3] [d], [e], [f]; Matter of Beaudoin v Toia, 45 NY2d 343, 347). Thus, no issue exists as to the minimum quality of the accommodations presently required by prevailing standards; what remains are questions of compliance and enforcement.
Ill
In sum, we conclude that the Appellate Division erred in its holding that Supreme Court lacked power to issue the preliminary injunction and that it was, therefore, bound, as a matter of law, to vacate the injunction. Because its vacatur was on the law as to the court’s power to set and enforce *121 minimum standards, the Appellate Division did not consider other questions presented, including whether there was an abuse of discretion or whether it, in the exercise of its discretion as an Appellate Division, should make a different disposition of the case (see, CPLR 6301; 7 Weinstein-Korn-Miller, NY Civ Prac f 5501.22), and remittal is therefore necessary (see, Public Adm’r v Royal Bank, 19 NY2d 127, 129-130).
The order of the Appellate Division, insofar as appealed from, should be reversed, with costs, and the case remitted to that court for further proceedings in accordance herewith.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone and Bellacosa concur.
Order, insofar as appealed from, reversed, with costs, and case remitted to the Appellate Division, First Department, for further proceedings in accordance with the opinion herein. Certified question answered in the negative.

. The details of several case histories illustrating plaintiffs’ allegations that defendants have denied them emergency housing meeting minimal standards of sanitation, safety and decency, as set forth in the complaint and moving papers, and of the procedural history, background and general description of the litigation are summarized in the opinions below (127 Misc 2d 23, 117 AD2d 198; see also, Matter of Lamboy v Gross, 126 AD2d 265; Matter of Fulton v Krauskopf, 127 Misc 2d 20).

. Supreme Court denied plaintiffs’ motion for class certification (127 Misc 2d, at 25) and the Appellate Division affirmed that denial (117 AD2d, at 221-222). The issue is not before us.

. This appeal is limited to minimum standards for "emergency housing which municipal defendants provide at hotels and motels.” Questions concerning minimum standards for tier I or tier II shelters (18 NYCRR 900.2 [b]) are not before us.

. Whether the municipal defendants have a legal duty under State or Federal law to furnish emergency shelter to eligible families where the shelter is not already being provided was addressed by the Appellate Division in a part of its opinion (117 AD2d, at 211-216) dealing with an entirely separate Supreme Court order. On May 30, 1985, Supreme Court (NY County [Meyers, J.]), denied motions by Linda James and Ronald Wright to intervene and for a preliminary injunction barring City officials from denying emergency shelter to homeless families. The Appellate Division reversed the decision of Supreme Court and granted the motions to intervene and for preliminary injunctive relief. Defendants filed an affidavit of intention to move for permission to appeal and plaintiffs moved to vacate the statutory stay (CPLR 5519 [a] [1]). Because the Appellate Division order granting the preliminary injunction was not final, defendants’ appeal to this court did not lie and the plaintiffs’ motion to vacate was denied as unnecessary (68 NY2d 713). This part of the Appellate Division order is, therefore, not before us.