OPINION OF THE COURT
 

 Memorandum.
 

 The order of the Appellate Division should be reversed, without costs, the complaint dismissed and the certified question answered in the negative.
 

 Plaintiffs commenced this action on behalf of homeless persons who suffer from HIV-related illness as defined by the AIDS Institute of the New York State Department of Health. Plaintiffs sought, among other things, a judgment declaring that they were entitled by Constitution or statute to the same shelter benefits from the City and State of New York as persons diagnosed with AIDS as defined by the Federal Centers for Disease Control (CDC) and an injunction requiring the City to provide them with medically appropriate housing.
 
 [1]
 

 The focus of the bench trial was the adequacy of the City’s program, developed after the institution of this lawsuit, to provide shelter housing for homeless persons with HIV-illness. This program includes the Comprehensive Care Plan (CCP),
 
 *910
 
 developed by the City Human Resources Administration in consultation with, among other entities, the State Department of Social Services (DSS), the City Department of Health and the AIDS Institute of the State Department of Health as a special housing plan that provides a variety of services to the medically frail homeless population, including those individuals with HIV-illness who are able to conduct their activities of daily living.
 

 Before the implementation of the CCP, homeless individuals with HIV-related illness were housed in barracks-style shelters among the general homeless population. Under the CCP, by contrast, segregated spaces in municipal shelters are used to house up to 12 individuals with HIV-illness or other medically frail individuals in a dormitory-style room. Those housed in the CCP space share common eating and bathroom facilities with other shelter residents, but are provided enhanced nutrition and special social services. The plan calls for each CCP to have daily on-site medical coverage and TB screening and control mechanisms, by a team of physicians, registered nurses, nurse practitioners, and physician’s assistants.
 

 Although Supreme Court concluded that plaintiffs are not constitutionally or statutorily entitled to the same shelter and benefits the City provides to persons with CDC-defined AIDS, it ruled that the CCP constituted unsuitable housing insofar as it permitted the housing of up to 12 persons in a room
 
 (see, Mixon v Grinker,
 
 157 Misc 2d 68, 74). The Appellate Division agreed with Supreme Court that plaintiffs have no constitutional or statutory right to the same benefits provided to persons with AIDS
 
 [2]
 
 and concluded, with one Justice dissenting, that the CCP "does not meet 'minimum standards of sanitation, safety and decency’ * * * for housing the plaintiff class as it fails to sufficiently protect them against the dangers of tuberculosis”
 
 (Mixon v Grinker,
 
 212 AD2d 183, 192-193, quoting
 
 McCain v Koch,
 
 70 NY2d 109, 113-114). The Appellate Division remanded the case to Supreme Court to fashion a judgment that provided plaintiffs with "minimally habitable” housing
 
 (id.,
 
 at 193). This appeal is before us on the certified question, "Was the order of this Court, which modified the order of the Supreme Court, properly made?”
 

 The lower courts’ reliance on
 
 McCain v Koch
 
 (70 NY2d 109,
 
 supra)
 
 as authority for their judicial scrutiny of the CCP was
 
 *911
 
 misplaced. In
 
 McCain,
 
 this Court ruled that in the "absence of any departmental regulation”
 
 (id.,
 
 at 120), Supreme Court had the equitable power to issue a preliminary injunction requiring the City, once it undertook to provide housing to the homeless, to furnish housing that "satisfies minimum standards of sanitation, safety and decency”
 
 (id.,
 
 at 113-114). In explaining its holding, the Court was careful to differentiate between Supreme Court’s equitable authority to craft standards of minimal habitability, which is an extraordinary judicial task reserved for a situation when no departmental guidelines exist, and Supreme Court’s authority to ensure compliance with the governing standards, which would always be proper. The Court emphasized that "[i]t was because of the absence of any departmental regulation that it was necessary for the court to establish its own minimum standards”
 
 (id.,
 
 at 120). Moreover, the Court in
 
 McCain
 
 explained that once DSS adopted regulations establishing standards of minimal habitability, "so long as the regulations are in effect, no question can exist concerning the minimum standards for the accommodations to be provided”
 
 (id.,
 
 at 118). Thus, there was no issue "as to the minimum quality of the accommodations presently required by prevailing standards; what remains are questions of compliance and enforcement”
 
 (id.,
 
 at 120).
 

 In this case, by contrast to
 
 McCain,
 
 the City has implemented a comprehensive program, formulated with input from public health experts including the director of the AIDS Institute, for housing HIV-ill and other medically frail individuals. Under these circumstances,
 
 McCain
 
 does not confer upon plaintiffs the right to plenary judicial review of the merits of this special medical needs housing program embodied in departmental guidelines
 
 (cf., Matter of New York State Socy. of Surgeons v Axelrod,
 
 77 NY2d 677).
 

 Chief Judge Kaye and Judges Simons, Titone, Bellacosa, Smith, Levine and Ciparick concur in memorandum.
 

 Order reversed, etc.
 

 [1]
 

 . Effective January 1, 1993, pulmonary tuberculosis (TB) and a lymphocyte count of less than 200, among other things, were added to the CDC’s list of conditions constituting AIDS. Although accurate statistics are not available, the parties agree that the amended definition has resulted in a significant decrease in the number of individuals who are classified as HIV-ill.
 

 [2]
 

 . Plaintiffs do not challenge this conclusion on appeal. We note that the rent subsidy provided pursuant to 18 NYCRR 397.11 is granted to both persons with AIDS and persons with HIV-related illness.