OPINION OF THE COURT
Lucy Billings, J.
The New York City Human Resources Administration (HRA) reduces or discontinues public assistance as a penalty when assistance recipients capable of work are charged with failing to comply with requirements that they train for, seek, and maintain employment. (Social Services Law §§ 335 [3]; 335-a [4]; 335-b [5] [a]; 336, 342; 18 NYCRR 385.2 [f]; 385.6 [a]; 385.7 [a]; 385.9 [a]; 385.12.) Recipients are entitled to appeal these penalties to the New York State Office of Temporary and Disability Assistance (OTDA), which affirms or reverses the penalty.
This proceeding seeks declaratory and injunctive relief under CPLR 3001 and 42 USC § 1983 as well as CPLR 7803 (3). Petitioner maintains that respondent’s requirement that petitioner appear for mandatory appointments that conflict with his known unsubsidized work schedule contravenes the aim of Social Services Law § 331 to assist petitioner to achieve economic independence and is both in violation of law and arbitrary. Petitioner further claims that respondent has implemented a system known as autoposting that automatically issues notices of decision to reduce or discontinue a recipient’s public assistance without first reviewing the case record in violation of 18 NYCRR 358-4.1 and constitutional due process.
I. Factual Background at Respondent’s Administrative Level
Petitioner, with his wife and three children, receives public assistance for their family. Petitioner works 40 hours per week, so when he was added to his wife’s public assistance case in March 2011 HRA budgeted the family’s public assistance to account for his full-time employment. Petitioner is required to participate in public assistance work activities, including work assessment, employment planning, and qualifying unsubsidized employment. (Social Services Law §§ 335, 336 [1] [a]; 18 NYCRR 385.2 [a], [f]; 385.9 [a].) On April 18, 2011, petitioner submitted proof of his full-time employment and notified HRA that he works Tuesdays through Saturdays, which prevents him from attending other mandatory work activities on those days. Respondent does not dispute that HRA approved petitioner’s unsubsidized job, but denies that in conjunction with this approval HRA received his work schedule.
*503 Petitioner failed to attend his mandatory work activity appointment scheduled Friday, May 13, 2011, because he was working. He received HRA’s conciliation notification requiring him to attend an appointment on May 26, 2011 to discuss his nonattendance at the work activity appointment on May 13, 2011. Petitioner could not appear for his conciliation appointment as it was scheduled on a Thursday when he also was working. Therefore, his wife appeared to submit his work schedule and inform HRA of his good cause for missing his mandatory work activity appointment. The caseworker accepted the offered documents, but required petitioner to appear at HRA’s office the following week, a requirement with which he also could not comply, because the office was closed for a holiday on his day off from work.
Petitioner received a notice of decision dated June 2, 2011, informing him of respondent’s intent to reduce petitioner’s public assistance as a penalty for his noncompliance with the requirement to attend his work activity appointment on May 13, 2011. On June 10, 2011, petitioner requested an administrative hearing to challenge respondent’s determination to penalize him for noncompliance with a work activity requirement.
A few days later petitioner received a notice to attend another mandatory work activity appointment scheduled June 22, 2011, again a day he was scheduled to work. He and his attorney repeatedly contacted HRA via the telephone number respondent provided in the mandatory appointment notice, in an unsuccessful attempt to reschedule the appointment, as no one ever answered, and HRA’s telephone system did not allow the caller to leave a message. His attorney also sent a letter on petitioner’s behalf via facsimile and certified mail to respondent’s subordinate official at the address provided in the notice. The letter explained the reason preventing petitioner’s attendance at this and other appointments that conflicted with his work and asked to reschedule future appointments for Mondays.
Petitioner received another conciliation notification requiring him to appear for a conciliation regarding his nonattendance at the mandatory work appointment on June 22, 2011. This conciliation was scheduled for July 7, 2011, a Thursday when again petitioner was scheduled to work. Again he and his attorney contacted HRA, via several unsuccessful telephone calls that were not answered and did not allow the caller to leave a message, to reschedule the conciliation and request accommodation of petitioner’s work schedule. His attorney sent another letter *504 via facsimile and certified mail to respondent’s subordinate, again explaining the reason preventing petitioner’s attendance at this and other appointments, and requesting rescheduling to a Monday.
Respondent received, but neither replied to nor accommodated these requests to reschedule petitioner’s appointments. Instead, petitioner received a notice of decision dated July 13, 2011 informing him of respondent’s intent to reduce petitioner’s public assistance as a penalty for his nonattendance at the mandatory work appointment on June 22, 2011. Petitioner requested another administrative hearing to challenge this notice of decision.
While petitioner’s two requests for administrative hearings were pending, petitioner was scheduled for another mandatory work appointment on a day when he was unavailable due to his work. His nonattendance at this mandatory work appointment led to another required conciliation appointment on a day that conflicted with his work schedule. Respondent did not respond to any of petitioner’s communications notifying respondent of petitioner’s inability to attend these mandatory appointments due to his work or requesting respondent to reschedule them to Mondays when petitioner would be available. Once again respondent issued a notice of decision informing petitioner that his public assistance was to be reduced as a penalty for his noncompliance with work activity requirements.
At petitioner’s administrative hearing regarding the first notice of decision, respondent voluntarily withdrew the notice, so petitioner was not penalized. After this hearing, again petitioner continually was scheduled for mandatory work activity appointments and then conciliation conferences, all on days when he could not attend because he was at work, followed by notices of decision to reduce his public assistance. At petitioner’s second administrative hearing regarding two subsequent notices of decision, respondent again withdrew both these notices, so petitioner’s public assistance was not reduced or discontinued.
Within nine months, petitioner was scheduled for six mandatory work activity appointments and six conciliation appointments, all of which he could not attend because they conflicted with his unsubsidized employment that respondent continually refused to accommodate, instead issuing notices of decision of the intent to penalize petitioner for his noncompliance. Before petitioner commenced this proceeding, respondent withdrew all these notices of decision. Since petitioner commenced this *505 proceeding, however, another administrative hearing has been pending regarding still more notices of decision for his nonattendance at his mandatory work activity and conciliation appointments.
II. Relief Sought
Petitioner seeks equitable relief declaring the following actions unlawful and enjoining them. (1) Respondent’s repeated scheduling of public assistance recipients for mandatory appointments that conflict with the recipients’ known work schedules and respondent’s attempts to penalize recipients for noncompliance with a work requirement when they are employed full time are arbitrary and violate Social Services Law §§ 331 and 342. (2) Respondent’s refusal to allow a family member or interested party to appear at conciliation appointments on behalf of public assistance recipients threatened with a penalty violates Social Services Law § 341 and deprives them of due process. (3) Respondent’s use of autoposting to issue notices of decision without investigating and reviewing the case record violates 18 NYCRR 358-4.1 and deprives public assistance recipients of due process.
Petitioner specifically seeks to enjoin respondent from scheduling mandatory work appointments and related conciliations that conflict with public assistance recipients’ known work schedules. He further seeks to enjoin the imposition of punitive sanctions for noncompliance with these appointments on (1) any public assistance recipient who engages full time in unsubsidized employment and (2) any other assistance recipient unless respondent has reviewed the recipient’s case record and considered the evidence relevant to the charged noncompliance.
III. Petitioner’s Standing to Seek this Declaratory and Injunctive Relief
Respondent contends that it already withdrew all the notices of decision to impose punitive sanctions on petitioner, rendering his challenge to those notices and to the procedures leading up to those decisions moot. Respondent insists that petitioner refused to withdraw his pending administrative hearing request to create a live controversy, but that, in fact, there is no actual controversy between the parties, and therefore petitioner lacks standing to seek his requested declaratory and injunctive relief.
A declaratory judgment action requires a genuine dispute: an actual ongoing controversy between interested parties with a *506 stake in the outcome. (CPLR 3001; Megibow v Condominium Bd. of Kips Bay Towers Condominium, Inc., 38 AD3d 265, 266 [1st Dept 2007]; Long Is. Light. Co. v Allianz Underwriters Ins. Co., 35 AD3d 253 [1st Dept 2006].) Because respondent’s withdrawal of the notices of decision to impose sanctions for petitioner’s noncompliance resolves only single instances of a continuing dispute after the fact, respondent has failed to provide petitioner complete relief and thus render a declaratory judgment unnecessary. (See Empire 33rd LLC v Forward Assn. Inc., 87 AD3d 447, 448 [1st Dept 2011].)
Respondent continually has refused to consider repeated notification from petitioner of conflicts with his work schedule and his repeated requests to accommodate that schedule. Nor has respondent indicated any intention to provide any accommodation to petitioner in the future.
As an ongoing public assistance recipient required to comply with work requirements, petitioner’s unsubsidized full-time employment qualifies as a requisite work activity. (Social Services Law § 336 [1] [a]; 18 NYCRR 385.9.) As long as petitioner meets this qualification and maintains this mandatory work activity with its set schedule as required, he is continually threatened with a determination by respondent that, because that required schedule conflicted with HRA appointments, he has not complied with mandatory work activity and conciliation appointments.
Petitioner unquestionably maintains an interest in protecting his family’s entitlement to public assistance, essential to their basic subsistence. Yet, as the pattern of respondent’s challenged practices illustrates, petitioner’s public assistance is continually at risk of reduction by respondent unless petitioner requests an administrative hearing that compels respondent to withdraw a determination to impose sanctions. Requiring petitioner to police respondent’s conduct in this way is neither a cognizable nor a sustainable remedy. (Matter of Benjamin v McGowan, 275 AD2d 290, 292 [1st Dept 2000]; see People v David W., 95 NY2d 130, 140 [2000].) Petitioner’s challenge to respondent’s practices therefore presents a genuine dispute over the parties’ legal rights and obligations, in which petitioner, if not respondent as well, maintains a substantial stake regarding the outcome. (Long Is. Light. Co. v Allianz Underwriters Ins. Co., 35 AD3d at 253.)
Moreover, even if any of petitioner’s claims are moot, an exception to the mootness doctrine permits a decision on an issue that (1) likely will recur, either between the parties or be *507 tween a party and other members of the public; (2) is substantial and novel; and (3) typically will evade judicial review. (Coleman v Daines, 19 NY3d 1087, 1090 [2012]; City of New York v Maul, 14 NY3d 499, 507 [2010].) Although petitioner so far has escaped reductions to his family’s public assistance, respondent’s withdrawal of the notices of decision to impose sanctions on petitioner does not prevent the recurrence of this risk, but instead makes it more likely to evade judicial review. Respondent’s failure to provide any accommodation or remedial measure preserves the likelihood that petitioner continually will be subjected to schedule conflicts and, consequently, be found non-compliant, leading to the imposition of sanctions.
Petitioner thus continues to present a claim that these issues will only be resolved if respondent is enjoined to conform HRA’s practices and procedures to legal requirements. Otherwise, petitioner remains at risk of irreparable deprivation of monthly assistance on which his family relies to meet basic needs. (See Coleman v Daines, 19 NY3d at 1090; McCain v Koch, 70 NY2d 109, 117 [1987]; Tucker v Toia, 43 NY2d 1, 8-9 [1977].)
IV The Absence of OTDA Does Not Necessitate Dismissal
A necessary party is one that is required to provide complete relief to the current parties or that may be inequitably affected by the relief granted between the current parties. (CPLR 1001 [a].) In a proceeding pursuant to CPLR article 78, a necessary party is the body or officer who took the challenged action. (CPLR 7802 [a]; Johnson v Scholastic, Inc., 52 AD3d 375 [1st Dept 2008]; Matter of Solid Waste Servs., Inc. v New York City Dept. of Envtl. Protection, 29 AD3d 318, 319 [1st Dept 2006].) Because respondent withdrew the notices of decision at the administrative hearings, OTDA neither upheld nor overturned respondent’s determinations and took no actions that petitioner challenges in this proceeding. Although OTDA is required to approve city respondent’s conciliation procedure (Social Services Law § 333), petitioner makes no claim against OTDA for approving respondent’s challenged conciliation practice or for failing to fulfill OTDA’s own statutory duties and seeks no relief against OTDA. (Matter of People Care Inc. v City of N.Y. Human Resources Admin., 89 AD3d 515, 516 [1st Dept 2011]; Joanne S. v Carey, 115 AD2d 4, 9 [1st Dept 1986]; see Matter of 27th St. Block Assn. v Dormitory Auth. of State of N.Y., 302 AD2d 155, 161 [1st Dept 2002].)
Respondent nonetheless insists that the issues in this proceeding are incapable of resolution without considering the legal and *508 financial interests of HRA’s oversight agency, OTDA, because it oversees the administration and budgeting for public assistance programs in New York. Respondent nowhere shows, however, why or how petitioner’s claims affect OTDA’s allocation of funds for budgeting purposes, statewide or in New York City. Although OTDA has approved respondent’s current conciliation procedure, petitioner does not challenge that approved procedure, but challenges only respondent’s implementation of that procedure to preclude a participant from attending a conciliation due to required work and a representative from conciliating on a participant’s behalf. (See City of New York v Long Is. Airports Limousine Serv. Corp., 48 NY2d 469, 475 [1979].) Respondent shows no involvement by OTDA in HRA’s autoposting procedure challenged by petitioner.
Regarding each of these procedures, as discussed further below, petitioner asks for relief that involves only respondent, including that it follow Social Services Law § 341 (1) (a) and OTDA’s own regulations (18 NYCRR 385.11 [a] [3], [4]; 385.12 [c] [1]; 358-4.1). Petitioner asks that respondent, not OTDA, refrain from discontinuing or reducing public assistance on the basis of a missed HRA appointment that conflicted with the recipient’s work, on the basis that a representative appeared to conciliate on a recipient’s behalf, or without the required review of the recipient’s case record. The court may afford complete relief from these practices without OTDA. (CPLR 1001 [a]; see Scarlino v Fathi, 107 AD3d 514, 515 [1st Dept 2013]; Mahinda v Board of Collective Bargaining, 91 AD3d 564, 565 [1st Dept 2012]; 27th St. Block Assn. v Dormitory Auth. of State of N.Y., 302 AD2d at 163.) The reforms to respondent’s practices that petitioner seeks are reforms to which respondent, not OTDA, must respond. (27th St. Block Assn. v Dormitory Auth. of State of N.Y., 302 AD2d at 163.)
Respondent also does not show, and the court does not perceive, how such relief might affect OTDA adversely. Neither party places the interpretation of OTDA’s regulations in question. (See Scarlino v Fathi, 107 AD3d at 515.) Neither party shows that OTDA has played any role in respondent’s failures to accommodate petitioner’s work schedule, to allow a representative for petitioner at a conciliation, or to review his case record. (Id.; 27th St. Block Assn. v Dormitory Auth. of State of N.Y., 302 AD2d at 160-161, 163.) Neither party shows that the cessation of these practices that petitioner seeks would require OTDA to do anything. (Scarlino v Fathi, 107 AD3d at 515; 27th *509 St. Block Assn. v Dormitory Auth. of State of N.Y., 302 AD2d at 161.)
Even had any such showing been made, petitioner’s failure to name OTDA as a party to this proceeding would not automatically require dismissal of the petition pursuant to CPLR 1001 and 1003. The court always may order the absent party to be joined or excuse joinder in the interest of justice. (CPLR 1001 [b]; 1003; Matter of Red Hook/Gowanus Chamber of Commerce v New York City Bd. of Stds. & Appeals, 5 NY3d 452, 458-459 [2005]; Saratoga County Chamber of Commerce v Pataki, 100 NY2d 801, 819 [2003]; 27th St. Block Assn. v Dormitory Auth. of State of N.Y., 302 AD2d at 161-162.)
Weighing CPLR 1001 (b)’s factors, dismissal would not be warranted for the very reason respondent urges: because the interests of respondent and OTDA are so intertwined, the absent party will incur little prejudice. (Saratoga County Chamber of Commerce v Pataki, 100 NY2d at 820; 27th St. Block Assn. v Dormitory Auth. of State of N.Y., 302 AD2d at 162; Arrigoni v Consolidated Rail Corp., 155 AD2d 357, 359 [1st Dept 1989]; Matter of Long Is. Contractors’ Assn. v Town of Riverhead, 17 AD3d 590, 594 [2d Dept 2005].) Respondent identifies no distinct interest of OTDA that it is entitled to defend against petitioner’s challenges to respondent’s conciliation practices and autoposting procedure, nor divergent position of OTDA that respondent would inadequately represent in defending against petitioner’s claims regarding the illegality of respondent’s practices and procedure. In sum, any interest of OTDA here is respondent’s own interest. (Saratoga County Chamber of Commerce v Pataki, 100 NY2d at 820; Long Is. Contractors’ Assn. v Town of Riverhead, 17 AD3d at 594.)
On the other hand, dismissal would leave petitioner without recourse against respondent’s practices and procedure until he undertook another proceeding naming OTDA a respondent. The potential harm to petitioner from that delay outweighs any prejudice to OTDA from its nonjoinder, when any interest of OTDA is protected adequately by respondent. (Saratoga County Chamber of Commerce v Pataki, 100 NY2d at 820; Long Is. Contractors’ Assn. v Town of Riverhead, 17 AD3d at 594.) Given that petitioner neither challenges any actions by OTDA nor seeks any relief against OTDA, he bears no responsibility for the nonjoinder and therefore is not to be burdened with any delay occasioned by dismissal or joinder. (Saratoga Colunty Chamber of Commerce v Pataki, 100 NY2d at 820-821; see 27th *510 St. Block Assn. v Dormitory Auth. of State of N.Y., 302 AD2d at 162-163.) The circumstances thus justify continuing this proceeding without OTDA. (CPLR 1001 [b]; Saratoga County Chamber of Commerce v Pataki, 100 NY2d at 820-821; 27th St. Block Assn. v Dormitory Auth. of State of N.Y., 302 AD2d at 163; Arrigoni v Consolidated Rail Corp., 155 AD2d at 359; Long Is. Contractors’ Assn. v Town of Riverhead, 17 AD3d at 594.)
Given respondent’s alignment with OTDA and OTDA’s oversight of respondent, if either respondent or OTDA perceived any potential adverse effect on or prejudice to OTDA, respondent was free to move to join HRA’s oversight agency, or OTDA, aware of this proceeding, was free to move to intervene in this proceeding against its local social services commissioner. (Saratoga County Chamber of Commerce v Pataki, 100 NY2d at 819, 821; 27th St. Block Assn. v Dormitory Auth. of State of N.Y., 302 AD2d at 163.) Given their failure to do so up to this point, respondent’s failure to show that OTDA is in fact a necessary party, petitioner’s lack of responsibility for the nonjoinder, and the prejudice to petitioner from any further delay, the court proceeds to address the merits of his claims.
V Respondent’s Failure to Conciliate upon a Participant’s Nonappearance or to Accommodate a Work Schedule
A. Failure to Conciliate
Petitioner is responsible for notifying HRA and furnishing it with proof of his compliance, the unwillfulness of any noncompliance, or good cause for noncompliance with work requirements. (Social Services Law § 341 [1] [a]; 18 NYCRR 385.12 [c] [2].) Respondent maintains that neither Social Services Law § 341 nor 18 NYCRR 385.12 (c) (2) requires HRA to allow an interested party or family member to appear for conciliation on petitioner’s behalf, particularly since petitioner may meet with a conciliation worker on any day before the scheduled appointment date.
While respondent may in fact permit a public assistance recipient to meet with a conciliation worker on a day before the conciliation appointment, the conciliation notification is confusing. It lists an “Appointment Date” and instructs below: “If you cannot keep this appointment, you may come in any day prior to the expiration date above and ask to speak to a Conciliation Worker.” (Verified petition, exhibit H at 1, exhibit L at 1, exhibit O at 1, exhibit S at 1, exhibit V at 1, exhibit Z at 1 [emphases added].) Nowhere above does the notice use the term *511 “expiration date” or indicate that the recipient must come to the listed HRA center before a specified deadline. Nothing prohibited the options petitioner used: contacting the HRA center via its listed telephone number and via written correspondence to its listed address.
To the contrary, the applicable statutes and their implementing regulations permitted petitioner to use those very options. None of the applicable laws requires that petitioner personally appear at the conciliation appointment or that his nonappearance leads to adverse action. Social Services Law § 341 (1) (a) allows respondent to issue a notice of intent to discontinue or reduce assistance only if the “participant does not contact the district within the specified number of days” (emphasis added). Likewise, 18 NYCRR 385.11 (a) (3) requires only that petitioner contact the social services officials for a conciliation regarding noncompliance with employment requirements.
The record unequivocally demonstrates petitioner’s multiple contacts of respondent’s offices and employees regarding the scheduling conflicts and petitioner’s good cause preventing his attendance at respondent’s scheduled appointments. At the conciliation appointment scheduled for May 26, 2011, petitioner’s wife appeared to submit proof of his job and his work schedule as good cause for missing the work activity appointment on May 13, 2011. Petitioner thus contacted respondent timely and fulfilled his responsibility to furnish good cause for the claimed noncompliance pursuant to Social Services Law § 341 (1) (a) and 18 NYCRR 385.11 (a) (3) and 385.12 (c) (2).
Respondent’s requirement that petitioner personally appear for a conciliation lacks statutory or regulatory support. Petitioner is entitled to provide reasons explaining his failure or refusal to comply with work requirements or explaining that he did comply. (18 NYCRR 385.11 [a] [2] [ii].) Respondent fails to provide any authority that petitioner’s right to provide that proof does not encompass submission of that evidence on his behalf, particularly by his wife, who is included in the same public assistance case.
After a conciliation, moreover, respondent may not take any further action unless respondent determines that the failure or refusal to comply with work requirements was both willful and without good cause. (Social Services Law § 341 [1] [b].) Respondent must consider all the circumstances and information submitted by petitioner in assessing unwillfulness and good *512 cause. (18 NYCRR 385.12 [c] [1]; see Earl v Turner, 303 AD2d 282, 283 [1st Dept 2003]; Benjamin v McGowan, 275 AD2d at 291-292.) Petitioner alleges, and respondent does not dispute, that respondent accepted the proof that petitioner’s wife submitted. If so, then respondent’s disregard of that evidence of petitioner’s unwillfulness and good cause and imposition of a sanction on his public assistance violate Social Services Law § 341’s and 18 NYCRR 385.12’s requirement to investigate whether unwillfulness or good cause is shown and their proscription against adverse action when timely provided evidence of unwillfulness or good cause. (See Earl v Turner, 303 AD2d at 282-283; Benjamin v McGowan, 275 AD2d at 291-292.)
B. Respondent’s Failure to Accommodate Petitioner’s Known Work Schedule
Social Services Law § 331 (1) requires that public assistance recipients “be furnished work activities and employment opportunities, and necessary services in order to secure unsubsidized employment.” Accommodations to be provided for public assistance recipients include supportive services, case management, and reasonable efforts to schedule work assignments that do not conflict with a recipient’s related work activities and opportunities. (Social Services Law §§ 332-a, 335-b [2]; 336-c [4]; 18 NYCRR 385.9 [b] [5].) Each recipient must receive an assessment of employability or employability plan, which must reflect the recipient’s preferences to the extent possible or specify the reasons why those preferences may not be accommodated. (Social Services Law § 335 [1], [2] [a].)
As Social Services Law § 331 (1) articulates, the goal of the public assistance and component work activity programs is to assist recipients toward economic independence and facilitate their economic independence by assisting and facilitating their attainment and retention of unsubsidized employment. Petitioner already has secured unsubsidized full-time employment, but respondent’s practices of disregarding petitioner’s requests to accommodate his work schedule and instead requiring petitioner to attend work activity appointments when he is required to be at work counterproductively undermine his achievement. Although respondent denies being informed of petitioner’s work schedule when petitioner initially submitted his employment verification, respondent does not deny receiving notification of petitioner’s work schedule at the conciliation on May 26, 2011, or receiving his attorney’s written requests to accommodate petitioner’s work hours and to sched *513 ule his mandatory appointments on Mondays. Yet respondent has refused to consider that schedule or those requests in requiring petitioner to attend subsequent work activity and conciliation appointments and has provided no reason why petitioner is not to be accommodated. (Social Services Law § 335 [1], [2] [a].) Respondent’s persistent denial of any concession to petitioner’s work schedule places petitioner in the untenable position of jeopardizing the unsubsidized employment he is obligated to retain, if he is to comply with another superimposed work activity, the overarching goal of which is to facilitate retention of that employment.
C. Conclusion
Respondent does not dispute that HRA now, at least, knows petitioner’s work schedule, Tuesdays through Saturdays, which prevents petitioner from attending any appointments on those days. Respondent has given no reason why HRA will not accommodate petitioner’s work schedule by either (1) scheduling his mandatory appointments at HRA on Mondays or (2) notifying petitioner of a deadline by which he must appear for an appointment sufficiently in advance to allow him to appear before the deadline on a Monday when HRA is open for business. Finally, respondent does not (1) dispute that HRA failed to account for the evidence of good cause that petitioner’s wife presented before respondent determined to reduce petitioner’s public assistance or (2) give any reason why any competent adult may not submit such evidence on behalf of a work program participant. Respondent has made no showing how HRA’s failures to accommodate a participant’s known work schedule in scheduling mandatory appointments and to consider evidence of good cause or unwillfulness submitted on a participant’s behalf are consistent with the Social Services Law and regulations and the laws’ goal of fostering participants’ progress toward self-sufficiency.
Consequently, the record establishes respondent’s failures (1) to schedule public assistance recipients’ mandatory work activity appointments at times that do not conflict with the recipients’ work schedules known to HRA (Social Services Law §§ 331, 335 [1], [2] [a]; 342), and (2) to allow a competent adult representative to appear at conciliation appointments on behalf of public assistance recipients. (Social Services Law § 341 [1]; 18 NYCRR 385.11 [a] [3]; 385.12 [c].) In the absence of any factual dispute material to these issues, these failures are unsupported by any rational basis and contravene statutory mandates. *514 (CPLR 7803 [3]; Roberts v Tishman Speyer Props., L.P., 13 NY3d 270, 285 [2009]; Matter of Action Elec. Contrs. Co. v Goldin, 64 NY2d 213, 223 [1984]; Matter of 20 Fifth Ave., LLC v New York State Div. of Hous. & Community Renewal, 109 AD3d 159, 165-166 [1st Dept 2013]; Matter of Metropolitan Movers Assn., Inc. v Liu, 95 AD3d 596, 598 [1st Dept 2012]; see Matter of Howard v Wyman, 28 NY2d 434, 438 [1971]; Matter of Bishop v New York State Dept. of Social Servs., 246 AD2d 391, 392 [1998]; Palmieri v Cuomo, 170 AD2d 283, 284 [1st Dept 1991].)
VI. Autoposting
18 NYCRR 358-4.1 (a) requires that “[a] social services agency-must review . . . actions to determine whether the action is correct based upon available evidence included in the applicant’s or recipient’s case record.” According to 18 NYCRR 358-4.1 (b), only after that review of the case record is respondent to issue a notice of decision informing an applicant or recipient of the action to be taken: “Where it is determined that the intended action is correct after review, the social services agency must send to the applicant/recipient a notice . . . .”
Contrary to petitioner’s claim that the notices of decision were issued automatically by respondent’s computer system without a review of petitioner’s case record, respondent insists that HRA “manually processed the case to implement the adverse action and initiate the NOD.” (Verified answer, exhibit 3; aff of Carlman Daniel ¶ 5.) Respondent claims an HRA employee personally reviewed petitioner’s case record and manually entered the information into OTDA’s computer system to generate the notices of decision. (Id. ¶ 6.)
Even if, as respondent claims, HRA manually generated the notices of decision issued to petitioner, the record completely belies respondent’s further claim that HRA carried out its duty to ensure that its adverse actions were correct before taking them. (18 NYCRR 358-4.1 [b].) HRA issued six notices of decision that petitioner’s public assistance would be reduced because he had “willfully and without a good reason failed or refused to comply with ... an employment or work activity assignment.” (Verified petition, exhibit N.) If HRA actually reviewed petitioner’s case record before issuing each of those six notices of decision, then such a claim demonstrates that HRA equates a missed conciliation appointment with willful noncompliance and lack of good cause for such noncompliance, prompting the notice of decision to impose sanctions. A determination that petitioner’s *515 missed appointments were both willful and with good cause required more than mere evidence of a missed appointment. (Social Services Law §§ 341 [1]; 342 [1]; 18 NYCRR 351.26 [b]; 385.11 [a] [2] [ii]; [4]; 385.12 [c] [1]; see Earl v Turner, 303 AD2d at 282-283; Benjamin v McGowan, 275 AD2d at 291-292.)
Notwithstanding this obvious failure to apply the willfulness and good cause requirements, HRA still was obligated to review petitioner’s case record before taking adverse action. (18 NYCRR 358-4.1 [b].) Respondent’s own employment manual requires that “any steps that the individual took to address issues . . . which prevented compliance with the employment requirement must be explored . . . .” (Verified petition, exhibit B at 14.8; verified answer, exhibit 2 at 14.8.) Tellingly, the employment manual’s guideline for good cause specifically lists employment as a good cause. (Verified petition, exhibit B at 14.9; verified answer, exhibit 2 at 14.9.) Had HRA in fact performed the requisite review of petitioner’s case record, it would have been impossible not to recognize that petitioner was employed when he missed the mandatory appointments, constituting both good cause for the nonattendance and the absence of willful nonattendance. Unless HRA did not maintain a case record, which no party has claimed, it must have shown petitioner’s full-time employment approved by respondent, petitioner’s work schedule, and the appointments that conflicted with that work, given the evidence his wife presented and the correspondence from his attorney explaining his nonattendance and requesting rescheduling as an accommodation. (See Castro v Department of Social Servs., 58 AD3d 441 [1st Dept 2009].)
In sum, even if HRA actually reviewed petitioner’s case record before taking HRA’s adverse actions, any such superficial review violated 18 NYCRR 358-4.1 (b)’s requirement to determine that the evidence in the case record supports the intended adverse action. (See Earl v Turner, 303 AD2d at 282-283; Benjamin v McGowan, 275 AD2d at 291-292.) Thus, whether or not HRA’s lapse in reviewing the case record for evidence of unwillful or willful nonattendance and evidence of a reason or lack of a reason for the nonattendance was due to HRA’s failure to apply the willfulness and good cause requirements altogether, HRA still failed in its duty to assure that the evidence in the record supported its adverse actions. If a cursory review of the case record fails to consider the evidence in the record, a missed appointment will still automatically lead to adverse action. Respondent’s claimed human involvement in *516 this process and in the ensuing manual entry to generate a notice of the adverse action violates 18 NYCRR 358-4.1 (b) just as much as petitioner’s claimed autoposting through a computerized system without human involvement.
VII. Relief Granted
A. Declaratory Judgment
The court declares and adjudges as follows. (CPLR 3001, 7803 [3]; 7806.) Respondent’s failure to schedule mandatory work activity appointments for petitioner, a public assistance recipient, at times that do not conflict with his work schedule when it is known to HRA violates Social Services Law §§ 331, 335 (1) and (2) (a), and 342. Respondent’s failure to allow a competent adult representative to appear at conciliation appointments on behalf of a public assistance recipient violates Social Services Law § 341 (1) and 18 NYCRR 385.11 (a) (3) and 385.12 (c).
Insofar as respondent equates a missed conciliation appointment with willful noncompliance and lack of good cause for such noncompliance, prompting a notice of decision to impose sanctions, this practice violates Social Services Law §§ 341 (1) and 342 (1) and 18 NYCRR 351.26 (b); 385.11 (a) (4); 385.12 (c) (1); and 358-4.1. A determination that a public assistance recipient’s missed appointment was both willful and without good cause requires more than evidence of a missed appointment. Whether respondent considers the failure to appear for a conciliation appointment, in itself, as both willful nonattendance and lack of good cause for the nonattendance, respondent’s failure to determine that the evidence in the case record supports the imposition of a sanction for an appointment missed willfully and without good cause violates 18 NYCRR 358-4.1. (See Earl v Turner, 303 AD2d at 282-283; Benjamin v McGowan, 275 AD2d at 291-292.)
B. Injunction
To remedy these violations of law, respondent shall (1) schedule mandatory work activity appointments for petitioner at times that do not conflict with his work schedule as known to HRA and (2) allow a competent adult representative to appear at conciliation appointments on petitioner’s behalf. Respondent shall refrain from equating a missed conciliation appointment with willful noncompliance and lack of good cause for such noncompliance, automatically prompting a notice of decision to impose sanctions. To determine that a missed appointment was *517 both willful and with good cause, HRA shall review the case record and consider all evidence of whether the nonattendance was willful or unwillful and whether it was with or without good cause. (CPLR 7806; McCain v Koch, 70 NY2d 109, 118 [1987]; Likokas v 200 E. 36th St. Corp., 48 AD3d 245 [1st Dept 2008]; Blutreich v Amalgamated Dwellings, Inc., 46 AD3d 352, 353 [1st Dept 2007]; Finegan Family, LLC v 77 Horatio St. Condominium, 38 AD3d 365, 366 [1st Dept 2007].)
Petitioner also seeks to enjoin respondent from imposing sanctions for noncompliance with mandatory work activity appointments and related conciliations on a public assistance recipient who engages full time in unsubsidized employment. Petitioner has shown that scheduling these appointments for a recipient who engages in full-time unsubsidized employment is contrary to law only if the scheduled appointments conflict with the recipient’s known employment. The relief granted above remedies this conflict. Although the recipient has achieved full-time employment, if he receives public assistance, he has not achieved self-sufficiency. Petitioner has not shown that respondent may not require work activity appointments to assist and facilitate the recipient’s training toward and promotion to more highly compensated employment. Therefore the court denies any further injunctive relief.
The court also stays the injunctive relief granted for 10 days after service of this order with notice of entry to permit respondent to notify its oversight agency and OTDA to move to intervene in this proceeding, if OTDA perceives grounds to do so. (CPLR 1001 [b]; 1003, 7802 [d]; Red Hook/Gowanus Chamber of Commerce v New York City Bd. of Stds. & Appeals, 5 NY3d at 459; Saratoga County Chamber of Commerce v Pataki, 100 NY2d at 820-821.) If the intervenor seeks to continue the stay, the intervenor must move by an order to show cause and support a continued stay with a showing that OTDA will be inequitably affected by the injunctive relief ordered against respondent. This stay is not an opportunity for respondent now, belatedly, to make such a showing.
C. Attorney’s Fees and Expenses
Petitioner claims entitlement to attorney’s fees and expenses under CPLR articles 81 and 83 and 42 USC § 1988. After expiration of the stay granted above without a motion for intervention, or after intervention is denied, or upon any final award of declaratory or injunctive relief in his favor after a determination of an intervenor’s rights, he may move for an award of fees *518 and expenses as warranted by the relief granted on the merits of his claims. He shall support any such motion with a showing of the legal services provided and expenses incurred to obtain that relief.